UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL MOI, an individual,

Plaintiff,

v.

CHIHULY STUDIO, INC., a Washington corporation; DALE CHIHULY, individually and as a married person; LESLIE CHIHULY, individually and as a married person,

Defendants.

No. 2:17-cv-00853

MOTION TO FILE DOCUMENT UNDER SEAL (COMPLAINT)

Note for Motion Calendar: June 16, 2017

## I.    RELIEF REQUESTED

Pursuant to W.D. Washington Local Civil Rule ("LCR") 5(g), Defendants Chihuly, Inc.,[1] Dale Chihuly and Leslie Chihuly (collectively, "Defendants" or "Chihuly") move to file under seal Exhibit A to the Notice of Removal, which is a copy of a Complaint by Plaintiff Michael Moi ("Plaintiff") against Chihuly. Because Exhibit A contains information potentially implicated by confidentiality agreements entered into by Chihuly and non-parties, Chihuly requests a redacted version of the Complaint be made available to the public, a copy of which is attached hereto as Attachment 1.

---

[1] There is no Washington corporate entity named "Chihuly Studio, Inc." Chihuly Studio is a registered trade name for Chihuly, Inc.

MOTION TO FILE DOCUMENT UNDER SEAL
  (No. 2:17-cv-00853)– 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   This motion is supported by the authorities set forth below and the Declaration of Harry

2   H. Schneider, Jr. in Support of Defendants' Motion to File Document Under Seal (Complaint)

3   ("Schneider Decl.").

## II.    FACTUAL BACKGROUND

5   Plaintiff Michael Moi ("Plaintiff") served, but did not file, a Complaint and Summons on

6   Defendants on May 15, 2017.  Schneider Decl. ¶ 2.  Such service commenced the action

7   pursuant to Washington Court Rule 3(a) and RCW 4.28.020.  Defendants filed the as-served

8   Complaint in the Superior Court of Washington in and for King County ("King County Superior

9   Court") and promptly moved to seal the Complaint and replace the public version with a

10  redacted copy.  *Id.* ¶¶ 3- 5.

11  The Complaint includes, among other things, causes of actions sounding in equitable

12  estoppel and federal copyright law based on factual allegations spanning nearly two decades.

13  *See* Dkt. No. 1, Ex. A (Compl.); Schneider Decl. ¶ 4.  Given the exclusive federal jurisdiction

14  over copyright claims, Defendants removed the King County Superior Court Complaint.  *See*

15  Dkt. No. 1 (Notice of Removal).  Attached to the Notice of Removal as Exhibit A is a copy of

16  the Complaint.  *Id.*

17  A portion of ¶ 3.26 of the Complaint—seven sentences in total out of twenty pages—

18  might be governed by agreements with non-parties and implicate the privacy interests of those

19  non-parties.

## III.    LEGAL AUTHORITY

21  The presumption of public access to court records ordinarily requires the moving party to

22  provide compelling reasons to seal a document.  *Kamakana v. City & County of Honolulu*, 447

23  F.3d 1172, 1178 (9th Cir. 2006).  Such compelling interest can be shown, inter alia, when such

24  "court files might have become a vehicle for improper purposes, such as the use of records to

25  gratify private spite, promote public scandal, circulate libelous statements, or release trade

26  secrets."  *Id.* (internal quotation and citation omitted).

MOTION TO FILE DOCUMENT UNDER SEAL
(No. 2:17-cv-00853) – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    The Ninth Circuit does not apply this presumption of access, however, when the material

2    to be sealed is attached to a non-dispositive motion, as here. *Id.* at 1178-79. Instead, a showing

3    of "good cause" under Rule 26(c) will suffice to seal such records. *Id.* at 1180; *see also Pintos v.*

4    *Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (applying a "good cause" standard to all

5    non-dispositive motions because such motions "are often unrelated, or only tangentially related,

6    to the underlying cause of action"). Rule 26(c) allows the Court to exercise its discretion "to

7    protect a party or person from annoyance, embarrassment, oppression, or undue burden or

8    expense." Fed. R. Civ. P. 26(c).

9          The good cause standard should apply here as well, where the document to be redacted is

10   the Complaint and is not before the Court on any motion. Aside from this Motion seeking to

11   redact portions of a single paragraph of the twenty-page Complaint, there are no pending

12   motions before the Court. Defendants removed this Complaint from King County Superior

13   Court, and the Notice of Removal necessarily requires as an attachment the state court complaint.

14   Defendants removed the exact Complaint that was served on them, but moved in King County

15   Superior Court to redact the same information that they now request this Court to redact.

16   Schneider Decl. ¶ 5.

17         Moreover, the information sought to be redacted concerns non-parties to whom Chihuly

18   may have non-disclosure obligations. The public disclosure of the information might be

19   considered an unauthorized disclosure of confidential information in violation of the

20   confidentiality agreements. And, whether or not protected by such contracts, the information

21   relates to private aspects of the non-parties' relationships that reasonable people would normally

22   wish to keep out of the public eye. Good cause exists to redact the Complaint to prevent the

23   annoyance, embarrassment and potential oppression on non-parties by disclosing details of their

24   relationships.

25         The redaction request is also narrowly tailored. *See* Attachment 1 (Complaint with

26   proposed redactions). Defendants seek to redact only a portion of a single paragraph in a 20-

MOTION TO FILE DOCUMENT UNDER SEAL
(No. 2:17-cv-00853) – 3

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

23641-0040/LEGAL135780175.2

1    page Complaint.  Should these few sentences become relevant to a motion or issue before the

2    Court in the future, this redaction may be re-examined and re-briefed as necessary.

3         For these reasons, good cause exists to redact the Complaint.

4                        **IV.    CERTIFICATION**

5         Pursuant to LCR 5(g)(3)(A), counsel for Defendants (Harry Schneider) will be contacting

6    counsel for Plaintiff contemporaneously with the completion of the removal proceedings this

7    morning to meet and confer regarding the need to file the document under seal, to discuss

8    alternative redactions, and to explore other alternatives to sealing.  It was not feasible or

9    advisable to contact Plaintiff's counsel prior to removal of this action based on a genuine

10   concern that Plaintiff might try to quickly amend the Complaint in order to redraft the allegations

11   to try to avoid federal removal jurisdiction based on the presence of a federal question.

12   Schneider Decl. ¶ 6.

13                        **V.    CONCLUSION**

14        Defendants respectfully request the Court file a redacted version of Exhibit A to the

15   Notice of Removal in the public record and retain the unredacted version under seal.

16        A proposed order will be submitted to the Court concurrently.

17

18

19

20

21

22

23

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

DATED:  June 2, 2017

s/ Harry H. Schneider, Jr., WSBA No. 9404
HSchneider@perkinscoie.com
Susan E. Foster, WSBA No. 18030
SFoster@perkinscoie.com
Will Rava, WSBA No. 29948
WRava@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

Attorneys for Defendants Chihuly, Inc., Dale
Chihuly, and Leslie Chihuly

MOTION TO FILE DOCUMENT UNDER SEAL
(No. 2:17-cv-00853) – 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

23641-0040/LEGAL135780175.2

**CERTIFICATE OF SERVICE**

I certify that on June 2, 2017, I served the foregoing on the following attorney(s) of record of record by the method(s) indicated:

| | |
|---|---|
| Anne Bremner | ___ Via U.S. Mail, 1st Class, Postage Prepaid |
| Frey Buck, P.S. | XX  Via Hand Delivery |
| 1200 Fifth Avenue | ___ Via Overnight Delivery |
| Suite 1900 | ___ Via Facsimile |
| Seattle, WA  98101 | ___ Via Email |
| abremner@freybuck.com | |
| 206-486-8000 | |

I certify under penalty of perjury that the foregoing is true and correct.

DATED this 2nd day of June, 2017.

s/ Harry H. Schneider, Jr., WSBA No. 9404
HSchneider@perkinscoie.com
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099

MOTION TO FILE DOCUMENT UNDER SEAL
(No. 2:17-cv-00853) – 6

23641-0040/LEGAL135780175.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# Attachment 1

SUPERIOR COURT OF WASHINGTON
IN AND FOR KING COUNTY

MICHAEL MOI, an individual,

           Plaintiff,

     v.

CHIHULY STUDIO, INC., a Washington
corporation; DALE CHIHULY, individually and
as a married person; LESLIE CHIHULY,
individually and as a married person,

           Defendants.

No.

COMPLAINT

PLAINTIFF MICHAEL MOI alleges as follows:

## NATURE OF THE ACTION

Dale Chihuly's fame, in part, is due to his reputation as a prolific artist whose ambition, brilliance, and talent allow him to personally create massive volumes of work; there is a profound disconnect between the truth, however, and this carefully crafted image. Although Chihuly and his studio have tacitly acknowledged that for decades a team of glassblowers has produced his famed glasswork, the truth behind the creation of his paintings has been intentionally hidden. Hundreds of millions of dollars' worth of paintings have been created, exhibited and sold across the globe, all claimed to be the sole work of Chihuly. These paintings

COMPLAINT- 1
{00275165;1}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

have not only spread Chihuly's name to all corners of the earth, but they have also brought him and his business great financial gain. Unlike artists such as Marilyn Minter, Jeff Koons, and Takashi Murakami, whose use of well-credentialed and artistically trained assistants is visible, well-documented, and transparent to the buying public, Dale Chihuly and the Chihuly Studio have publicly maintained that his drawings, paintings, and prints are made by his own hand, and that doing so plays a "very central role" to his creative process.[1] The reality is that the artist has long relied on a collection of discreet and trusted individuals to work in the shadows to create the drawings and paintings on paper, glass, Plexiglas, and canvas that bear his name. This small group, which has never been publicly acknowledged, had two requirements: secrecy and unwavering loyalty. For almost two decades, Michael Moi (hereafter "Moi") personified both.

From the years 1999-2014, Moi participated in myriad clandestine painting sessions. Importantly, at no point in this long relationship did Moi ever get paid for his effort, become an employee, or sign an assignment of copyright, a "work for hire" agreement, or confidentiality agreement. In lieu of payment for his years of creative contributions, Dale Chihuly repeatedly and consistently promised Moi future compensation. Moi co-authored a large volume of visual works that have been inaccurately credited solely to, and exploited solely for the economic benefit of, Dale Chihuly, Chihuly Studio, and Chihuly Workshop (collectively, "Chihuly"), all in breach of the agreement Chihuly had with its shadow painting team. Moi now demands a complete accounting and payment of proceeds rightly due to him under the Copyright Act and rightful attribution per the Visual Artists Rights Act ("VARA").

---

[1] Nathan Kernan, "The Butterfly and the Spider", in *Chihuly Drawings* (2014).

COMPLAINT- 2
{00275165;1}

# I.  PARTIES

1.1    Plaintiff Michael Moi is a resident of King County, Washington and resides within the Western District of Washington.

1.2    Defendant Chihuly Studio, Inc., ("Studio") is, on information and belief, a Washington Corporation doing business in King County, Washington, within the Western District of Washington.

1.3    Defendant Dale Chihuly is a resident of King County, Washington, is an owner of the Studio and exercises control over the activities of the studio. He resides within the Western District of Washington.

1.4    Defendant Leslie Chihuly (hereafter "Leslie") is a resident of King County, Washington, an owner of the Studio and acts as its president. Leslie and Dale Chihuly are husband and wife. She resides within the Western District of Washington.

# II.  JURISDICTION AND VENUE

2.1    This court has jurisdiction over the parties and subject matter of this lawsuit.

2.2    Venue is proper in King County Superior Court.

# III.  FACTUAL ALLEGATIONS

3.1    Michael Moi first became acquainted with Dale Chihuly in the fall of 1999 on Chihuly's boat the *Meteor*. Moi met the artist through Billy O'Neill ("O'Neill"), then an employee at the Salmon Bay Boat Yard who also worked as a boat skipper for Chihuly. O'Neill left his position at Salmon Bay to become Chihuly's assistant soon after Moi's introduction to the artist.

COMPLAINT- 3
{00275165;1}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

3.2     Moi was initially hired as an independent contractor for building and construction-related contract work. These short-term projects, ranging from roof replacements on several of Chihuly's properties to decommissioning an oil tank at Chihuly's then-girlfriend's house, were all clearly defined in scope and were identified in terms of specific services and expected deliverables. Moi received proper compensation for all contracted work.

3.3     Shortly after his initial introduction to Dale Chihuly, Moi began receiving calls from the artist, his executive assistants and/or O'Neill requesting Moi's attendance at Chihuly's frequent and impromptu painting sessions. Due to Chihuly's often manic requests, O'Neill and his assistants were frequently deluged with the artist's overwhelming number of demands. Moi and others were brought in to fill the gaps.

3.4     Dale Chihuly's painting sessions, though frenzied, resulted in what the artist wanted most: an efficient production line generating a large volume of paintings. Before each session, long lines of heavy stock French watercolor paper would be laid out, edge to edge, in as many rows as the Boathouse's outdoor deck or indoor painting studio (known as the "Blue Room") would allow. Painting on the deck required several preparatory steps. First, the watercolor paper had to be carefully tacked down in each corner to prevent Lake Union's unpredictable wind from overturning any completed works. Second, foam mops and five-gallon plastic buckets, half-filled with water, were placed among the rows of blank paper. Third, large grey metal rolling carts containing Chihuly's custom-made Golden acrylic paints would be positioned and readied for use (Moi had a great deal of this same custom Chihuly paint in his possession). In the warmer months, it was not uncommon for two painting sessions to be scheduled per day - one in the morning and another in the evening. The large amount of prep

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

1    work and support required for these painting sessions resulted in Moi being on ever-ready

2    standby should Chihuly or O'Neill call him.

3        3.5     Once begun, the painting sessions were intensely focused. Working just a few

4    steps ahead of Chihuly, O'Neill and Moi would pour paint directly onto the long line of blank

5    paper and begin to "mop out" the background colors. Chihuly would follow on their heels with

6    dots, drips and lines of his own as they worked their way down the row of white paper. Once

7    Moi created the background and body of the piece, Chihuly or O'Neill would then add additional

8    touches: lip wraps, body wraps, reeds, or other abstract forms.

9        3.6     The final step was completed by adding Chihuly's recognizable signature to the

10    bottom of each painting. This process was repeated for each row of paper until everything had

11    been completed.

12        3.7     If Chihuly desired a second painting session, the entire preparatory process would

13    be repeated, and the still-drying paintings would have to be untacked from the wooden deck and

14    taken inside through the small "Blue Room" deck door to be placed on a drying rack.

15        3.8     To facilitate the additional paint sessions and increased volume of work, Moi

16    installed additional deck lighting for longer painting sessions during the summer months. He also

17    brought in his long-handled roofing blow-torch to gently heat and "set" the wet paint so the

18    finished works could be removed from the deck to make room for the evening paint session.

19        3.9     Chihuly encouraged Moi's creative additions and ideas. For example, one session

20    close to Halloween in the early 2000s, Moi conceived of a "Pumpkin" series, and created large

21    orange forms on white and black backgrounds. Both Moi and Chihuly created "faces" for each

22

23

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

Pumpkin drawing in white or black paint. Chihuly was enthusiastic about the series and spent the next several paint sessions creating additional Pumpkin drawings.



Images of the "Pumpkin" series used on Chihuly's Facebook page for posts in 2013, 2014, and 2015.

3.10    The paint sessions continued in this manner until approximately 2005, differing only on the rare occasions where Chihuly brought in additional help. Chihuly would occasionally bring in photographers and videographers to shoot painting sessions. Moi believes two of these people were studio staff. Others also documented the process through polaroid photographs and other forms.

3.11    In general, Studio staff and the glassblowers working downstairs were prohibited from accessing the deck, the Blue Room, and Chihuly's private quarters, but Moi was granted unfettered access by Chihuly. While he acknowledged Moi's contributions to his artwork, this acknowledgment was private; Chihuly sought to maintain the illusion both internally and to the public that he was the sole creator.

3.12    One of the more tedious, yet necessary tasks in Chihuly's growing business was applying his signature to the thousands of highly profitable Portland Press (now titled "Chihuly

**COMPLAINT- 6**
{00275165;1}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

Workshop") edition glass works, prints, publications and DVDs. When Chihuly was unwilling or unable to complete the task of signing the voluminous output he would call on Moi and O'Neill. Moi assisted O'Neill, holding Portland Press glass edition pieces so O'Neill could sign Chihuly's signature on each work with a Dremel tool.

3.13    Chihuly's trust in and dependence on Moi grew over time, and Moi considered Chihuly a close friend. As this friendship and bond deepened, it was a normal occurrence for Moi to frequent Chihuly's private living quarters while the artist soaked in and made phone calls from the white claw foot tub in his library/bedroom. Moi and Chihuly socialized often, sharing many meals together in Chihuly's upstairs kitchen and drinking heavily while Chihuly entertained multiple girlfriends. The two men also shared Human Growth Hormone (HGH) and Vitamin B shots provided by Chihuly's doctor.

3.14    Chihuly's up and down manic cycles were a constant during this same period. At one point, Chihuly became convinced O'Neill and Leslie Jackson (then Chihuly's on/off girlfriend and mother of his son, Jackson) were conspiring against him. As a result, Chihuly entrusted Moi with original faxes, legal documents, and other correspondence and items of a personal nature. Chihuly adamantly instructed Moi to keep these documents safely hidden. Chihuly told Moi he would "take care of him" at a later point in time by reaffirming Moi's contributions to the Chihuly Studio. Chihuly assured Moi that the registration and sales departments kept great records, and that Moi's share of the profits on the works they created could be readily ascertained and would be awarded at a later date. Specifically, Chihuly frequently promised and assured Moi that when the Studio wound down its operations, Moi would be properly financially compensated for his contributions to Chihuly's artwork as well as

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

his numerous contributions to the Studio. Given that Chihuly and Moi had worked together for years, that Chihuly had entrusted Moi with highly personal and private effects as a show of his trust and confidence in their agreement, and given Moi's belief in Chihuly's integrity and word, Moi reasonably relied upon Chihuly's representations and promises.

3.15   In late 2005, Moi's wife of twenty-two years unexpectedly passed away. Devastated, Moi went into a semi-retirement to deal with his personal loss. Moi lost contact with Chihuly for the next two years.

3.16   In early summer of 2007, Moi was asked by O'Neill to assist Chihuly at his paint studio, now located at his Ballard facility, in the creation of a new body of work. This was due to Moi's previous experience as a professional roofer, where he had routinely worked with combustible and flammable materials. Moi once again brought in his long and short blow torches, this time to "burn" thick layers of paint and metallic dust on works now being created by Chihuly, O'Neill, Piper O'Neill, and Damien Villarreal. Moi attended approximately four more weekend painting sessions that year to "burn" and "dust" metallic pigment on backgrounds and to move finished paintings. Moi continued to come in sporadically, approximately three to four times per year over the next three years.

3.17   In 2011, Moi resumed his consistent involvement with Chihuly and the Chihuly Studio. Moi had completed a home remodel for Billy O'Neill, now Vice President for the Chihuly Studio. Chihuly visited O'Neill's home and then called Moi to comment on how impressed he was with Moi's work. Chihuly asked Moi to resume the construction work he had previously done for him.

COMPLAINT- 8
{00275165;1}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

3.18    Chihuly had by that time hired Victor Humeniuk as facilities manager for the Chihuly Studio. Humeniuk had been the manager of the Salmon Bay Boat Yard and had there met Billy O'Neill. O'Neill later hired Humeniuk to work at the Chihuly Studio. Although his employment was terminated due to allegations of theft, Humeniuk was subsequently re-hired years later in the role of facilities manager.

3.19    From that point forward, at Chihuly's request, Humeniuk began hiring Moi and Moi's new wife, Kellie Moi for various jobs in Chihuly's buildings in Ballard, Lake Union, and Tacoma, as well as Dale and Leslie Jackson Chihuly's vacation home in Indianola, Washington.

3.20    From 2012 onward, the Studio once again called upon Moi with increased frequency to assist with the execution of large Plexiglas paintings. As the size, scale, and complexity of Chihuly's paintings had increased, so had the process required to complete them. Now infirm, Chihuly contributed little to the conception or creation process. Yet, despite his incapacity, he still demanded that high volumes of the lucrative work be produced. At Chihuly's instruction, O'Neill was now directing the process - a veritable production line pumping out large quantities of works the Studio attributed to Chihuly's own hand and intended primarily for Chihuly's London gallery, Halcyon.

3.21    By 2014, the demand in London for large scale "quads" and huge Plexiglas "light drawings" had increased dramatically. Large numbers of pieces would be laid out on the painting room floor so tightly that Moi remembers Chihuly reprimanding him and O'Neill for leaving footprints on finished drawings. Creating such large-scale works was physically demanding, yet the nature of their creation still demanded complete secrecy and discretion, even from Chihuly's own staff. On multiple occasions in 2014, the Studio asked Moi to come to

COMPLAINT- 9
{00275165;1}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

Chihuly's Ballard paint studio in the evenings or weekends to paint with Chihuly and O'Neill. Chihuly's involvement was limited to signing completed works; he played no role in the creative process. Moi painted backgrounds and added drips, dashes and lines to innumerable drawings, paintings, and Plexiglas panels.



Michael Moi's paint spattered pants and shoes from Chihuly's surreptitious painting sessions.

3.22    During this timeframe, painting session regulars Damien Villarreal and Piper O'Neill were occasionally unable to attend scheduled sessions. When one or both were unable to attend, Chihuly or O'Neill would ask Moi to assist. Other non-studio persons would also occasionally be called in if Villarreal and/or Mrs. O'Neill were absent. Moi remembers the following participants: Mike Robinson, Eric Dunham, Luanna Dunham, Mike Sofie, Squire Broel, Roger Ligrano, Ricky Andrews. Chihuly's physical involvement in the painting process was virtually non-existent during the past decade.

**COMPLAINT- 10**
{00275165;1}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

1    3.23    In January 2015, O'Neill was terminated from his employment at Chihuly Studio.

2    From that point forward, Moi's connection with both the Studio and Chihuly himself diminished

3    rapidly. Moi was confused by this but assumed Chihuly would eventually resume the painting

4    sessions and that Moi's other construction/maintenance contract work would continue.

5    3.24    On September 26, 2016, Moi finally learned the reason for Chihuly's unexplained

6    distance. That day, after lunch at a nearby restaurant, Mr. and Mrs. Moi stopped by the Chihuly

7    Boathouse for an impromptu visit to the hotshop. As they pulled up, Chihuly and his driver and

8    janitor, Scott Roswell, were headed towards Roswell's company truck. Chihuly and Moi chatted

9    for a few minutes. As he departed, Chihuly half-heartedly suggested that Moi call Humeniuk to

10    inquire about work on several of Chihuly's pending projects.

11    3.25    After Chihuly and Roswell left, the Mois stayed behind to talk to Studio

12    employee, Eddie Remaly. Remaly told Moi that the reason he had suffered sharply curtailed

13    work with the Studio was due to Moi's relationship with O'Neill. Remaly stated that O'Neill had

14    sued the Chihuly Studio. Moi knew O'Neill had been fired, but he was still unsure why his

15    friendship with O'Neill had resulted in his own apparent expulsion from the studio.

16    3.26    On December 24, 2016, Moi finally heard the full story. Moi had contacted

17    Humeniuk for advice regarding a vintage car Moi intended to restore. ▮▮▮▮▮▮▮▮

18    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮,

23

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

1

2

3

4

5

6

7 ▮▮▮▮▮▮▮▮▮▮▮▮.

8    3.27   Humeniuk further informed Moi that since settling with the O'Neills and

9 Villarreal, the Chihuly Studio had already replaced the former secret painting team with a new

10 group of local artists and the production process was continuing just as it had before. However,

11 Humeniuk said that Chihuly himself hardly ever came to the Studio anymore and that his wife

12 was now running the Studio.

13    3.28   Because Leslie Chihuly had no role in the creative process during the seventeen

14 years Moi had interacted with Chihuly and wasn't involved in the conversations related to the

15 terms of Moi's delayed future compensation, Moi realized Chihuly had intentionally misled him,

16 and that neither Chihuly nor the Chihuly Studio was going to compensate him for his years of

17 painting work as promised. The information gained from his phone conversation with Humeniuk

18 verified that Chihuly was repudiating Moi's rights, rights he gained through justifiable and

19 detrimental reliance on Chihuly's specific promises and Chihuly's word.

20    3.29   From the onset of Moi's involvement in the creative process, Chihuly had said

21 that the involvement of Moi and other people in the painting process had to be kept secret or the

22 drawings would have no value. Chihuly often joked about the unsophisticated nature of his

23

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

collectors and that they were only concerned with "bright colors and my signature". Chihuly assured Moi that despite the need for secrecy, his registration department had taken steps to document Moi's involvement, and it would be easy to quantify Moi's contributions for the sake of rightful compensation. Chihuly told Moi that he would make sure Moi was properly compensated at the right time.

## IV.  CAUSES OF ACTION

4.1  <u>Equitable Estoppel/Toiling.</u>

4.1.1  Based upon Defendants' promises and assurances and Plaintiff's justifiable reliance on same, Defendants must be estopped from asserting a statute of limitations defense on any claim in this action.

4.1.2  Defendants acted in bad faith, deceiving Plaintiff, and made false assurances to him that Plaintiff could not have discovered in the exercise of reasonable care. The detail and intricacy of Defendant Chihuly's promises and assurances, his close relationship with the Plaintiff and his consistent treatment of the Plaintiff caused Plaintiff to justifiably rely on Chihuly's promises. Equitable tolling is necessary to prevent injustice.

4.1.3  Moreover, Defendants' denial of Plaintiff's claims is inconsistent with Defendant Chihuly's promises and assurances.  Because of Plaintiff's justifiable reliance on Chihuly's promises and assurances, he was prohibited from diligently pursuing his legal remedies, on the faith of Chihuly's promises and assurances. Defendants must be equitably estopped from asserting a statute of limitations defense as it is necessary to prevent a manifest injustice.

4.2  <u>Promissory Estoppel/Detrimental Reliance.</u>

COMPLAINT- 13
{00275165;1}

1    4.2.1   Defendants made a promise to pay Plaintiff for his services at a later date.

2    Defendants should have reasonably expected such promise would cause Plaintiff to change

3    position by rendering services to Defendant. Plaintiff was justified in relying on Defendants'

4    promise; plaintiff materially changed his position to his financial detriment in reliance on such

5    promise. Injustice can be avoided only if Defendant's promise is enforced.

6    4.2.2   Plaintiff is entitled to judgment under the theory of Promissory

7    Estoppel/Detrimental Reliance in an amount to be proven at trial.

8    4.3   <u>Declaratory Judgment of Co-Authorship and Co-Ownership of Joint Works.</u>

9    4.3.1   Plaintiff Moi repeats and incorporates by this reference each and every

10   allegation set forth in Paragraphs 1 through 4.3, inclusive.

11   4.3.2   There is a real and actual controversy.

12   4.3.3   Plaintiff Moi authored original artistic works with Defendant Chihuly and

13   others between 1999 and 2014, including drawings and paintings on paper, glass, Plexiglas and

14   canvas (collectively, the "Joint Works").

15   4.3.4   Plaintiff Moi's authorship included conceiving and executing the Joint

16   Works. Those contributions were independently copyrightable and represented original artistic

17   expression.   Moi and Defendant Chihuly intended their contributions to be merged into

18   inseparable or interdependent parts of a unitary whole. As such, the works are joint works under

19   the Copyright Act, 17 U.S.C. §101, *et seq.*

20   4.3.5   The Joint Works are original works subject to the rights and protections

21   under the Copyright Act, 17 U.S.C. § 101, *et seq.*

22   4.3.6   Plaintiff Moi is the co-owner of the Joint Works.

23

COMPLAINT- 14
{00275165;1}

1    4.3.7   Plaintiff Moi is entitled to an equal undivided ownership interest in each

2    of the Joint Works, including the copyrights in and to each of the Joint Works.

3    4.3.8   Plaintiff Moi was never an employee of Defendants, never agreed in a

4    signed writing that the Joint Works should be considered works made for hire, and never

5    assigned or transferred any rights in and to the Joint Works or the copyrights in the Joint Works.

6    4.3.9   Defendants have repudiated Plaintiff Moi's co-ownership of the Joint

7    Works.

8    4.3.10  By virtue of the foregoing, an actual and justiciable controversy exists

9    between Plaintiff Moi and Defendants concerning Moi's status as a co-author and co-owner of

10   the Joint Works.

11   4.3.11  Accordingly, Plaintiff Moi is entitled to a declaration that he is the co-

12   author and co-owner of the Joint Works, and owns an equal undivided interest in each of the

13   Joint Works.

14   4.4    Accounting of Revenue and Imposition of Constructive Trust.

15   4.4.1   Plaintiff Moi repeats and incorporates by this reference each and every

16   allegation set forth in Paragraphs 1 through 4.4, inclusive.

17   4.4.2   Plaintiff Moi is informed and believes, and based thereon alleges, that

18   Defendants have and are continuing to receive payments from the sale, use or other exploitation

19   of the Joint Works.

20   4.4.3   Plaintiff Moi is entitled to an accounting of all revenues received or

21   derived by Defendants from their sale, use or other exploitation of the Joint Works.

22   4.4.4   To the extent that Defendants have received or will receive any revenues

23

COMPLAINT- 15
{00275165;1}

as a result of their sale, use or other exploitation of the Joint Works, Defendants hold those revenues in trust for Plaintiff Moi, pending an accounting and distribution to Moi for his equal undivided interest in the Joint Works.

4.5     <u>Injunctive Relief Under VARA</u>.

4.5.1    Plaintiff Moi repeats and incorporates by this reference each and every allegation set forth in Paragraphs 1 through 4.5, inclusive.

4.5.2    The Joint Works are works of visual art under 17 U.S.C. § 101 and 17 U.S.C. § 106A.

4.5.3    Plaintiff Moi is an author of the Joint Works.

4.5.4    Plaintiff Moi never waived his right to claim authorship of the Joint Works.

4.5.5    Accordingly, Plaintiff Moi is entitled to claim authorship of the Joint Works under 17 U.S.C. § 106A(a)(1)(A).

4.5.6    Plaintiff Moi is entitled to temporary, preliminary and permanent injunctive relief restraining and enjoining defendants from denying Plaintiff Moi's authorship of the Joint Works or claiming an interest inconsistent with Moi's right to claim authorship of the Joint Works.

4.5.7    Additionally, Plaintiff Moi is entitled to remedial injunctive relief correcting any misstatements or misrepresentations by Defendants regarding Moi's authorship of the Joint Works, including any claims that those works were solely authored by Defendant Chihuly.

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

## V. PRAYER FOR RELIEF

UPON THESE ALLEGATIONS, Plaintiff Moi prays for the following relief:

A.    That the Court enter a declaratory judgment that Plaintiff Moi authored original artistic works with Defendant Chihuly and others between 1999 and 2014.

B.    That the Court enter a declaratory judgment that each of the works co-authored by Plaintiff Moi is a joint work under the Copyright Act, 17 U.S.C. §101.

C.    That the Court enter a declaratory judgment that Plaintiff Moi was not an employee of Defendants within the meaning of 17 U.S.C. §101, and that the works he co-authored are not works made for hire thereunder.

D.    That the Court enter a declaratory judgment that Plaintiff Moi owns an equal undivided interest in each of the works he co-authored, including the copyrights in and to each of the works.

E.    That the Court order Defendants to account to Plaintiff Moi for all revenues or other benefits they received or derived from their sale, use or other exploitation of the works co-authored by Moi.

F.    That the Court enter an order declaring that Defendants hold in trust, as constructive trustees for the benefit of Plaintiff Moi, all revenues or other benefits received or derived from their sale, use or other exploitation of the works co-authored by Moi.

G.    That the Court enter a declaratory judgment that the works co-authored by Moi are works of visual art 17 U.S.C. § 101 and 17 U.S.C. § 106A.

H.    That the Court enter a declaratory judgment that Plaintiff Moi never waived his rights under 17 U.S.C. § 106A.

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

I.    That the Court enter a declaratory judgment, pursuant to 17 U.S.C. § 106A(a)(1)(A), that Plaintiff Moi is entitled to claim authorship of the works he co-authored.

J.    That the Court enter an order restraining and enjoining Defendants from denying Plaintiff Moi's authorship of the works he co-authored or claiming an interest inconsistent with Moi's right to claim authorship of the works.

K.    That the Court enter an order requiring Defendants to provide corrective or remedial notice to any persons or entities to whom Defendants have denied Plaintiff Moi's authorship of the works he co-authored, or to whom Defendants have claimed an interest inconsistent with Moi's right of authorship, including any claims that those works were solely authored by Defendant Chihuly.

L.    That the Court order Defendants, pursuant to 17 U.S.C. §§ 504(b) and (c)(1), to pay actual or statutory damages to Plaintiff Moi, and any profits of received by Defendants that are attributable to Defendants' infringements and, pursuant to 17 U.S.C. § 504(c)(2), enhanced damages for Defendants' willful infringements of copyrights;

M.    That the Court order Defendants, pursuant to 17 U.S.C. § 505, to pay full costs and reasonable attorney's fees;

N.    That the Court order pre- and post-judgment interest on the amount of any award to Plaintiff Moi.

O.    That the Court grant to Plaintiff Moi such other and additional relief as is just and proper.

## VI.    JURY DEMAND

Plaintiff Moi demands trial by jury of all issues so triable.

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

DATED this 2nd day of May, 2017.

**FREY BUCK, P.S.**


By:    s/Anne Bremner
       Anne Bremner, WSBA #13269
       Attorney for Plaintiff

**COMPLAINT- 19**
{00275165;1}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

## Certificate of Service

The undersigned certifies under the penalty of perjury according to the laws of the United States and the State of Washington that on this date I caused to be served in the manner noted below a copy of this document entitled COMPLAINT on the following individuals:

Susan Foster
Harry Schneider
Perkins Coie
1201 Third Avenue, Suite 4900
Seattle, WA 98101
(206) 359-8000
HSchneider@perkinscoie.com
*Attorney for Defendants*


[ ]    Via Facsimile
[ ]    Via First Class Mail
[X]   Via Messenger
[ ]    Via Electronic Mail


DATED this 2nd day of May, 2017, at Seattle, Washington.


s/ Lia Maria Fulgaro
Lia Maria Fulgaro
Paralegal

**COMPLAINT- 20**
{00275165;1}