UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL MOI, an individual,

Plaintiff,

v.

CHIHULY STUDIO, INC., a Washington corporation; DALE CHIHULY, individually and as a married person; LESLIE CHIHULY, individually and as a married person,

Defendants.

CHIHULY INC., a Washington corporation; and DALE CHIHULY, individually,

Counterclaim-Plaintiffs,

v.

MICHAEL MOI, an individual,

Counterclaim-Defendant

No. 2:17-cv-00853-RSL

CHIHULY'S MOTION FOR SUMMARY JUDGMENT

**NOTE ON MOTION CALENDAR: MARCH 1, 2019**

***ORAL ARGUMENT REQUESTED***

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................. 1

II. STATEMENT OF FACTS ..................................................................................... 1

    A. Dale Chihuly, His Art, and the Studio ..................................................... 1

    B. Chihuly's Drawings .................................................................................. 3

    C. Michael Moi and This Lawsuit ................................................................. 4

        1. Moi's Joint Authorship Claim .......................................................... 5

        2. Moi's Promissory Estoppel Claim .................................................... 7

III. ARGUMENT ......................................................................................................... 8

    A. Summary Judgment Standard .................................................................... 8

    B. Moi's Copyright Claim Fails as a Matter of Law ..................................... 8

        1. Moi Cannot Identify the Works at Issue or His Alleged
           Contributions .................................................................................... 9

           a. Moi cannot identify the works he claims to have co-
               authored ..................................................................................... 9

           b. Moi cannot identify his alleged contributions ........................... 11

        2. Moi Cannot Establish the Required Elements of "Joint Authorship" ...... 12

           a. Moi did not exercise sufficient control ...................................... 13

           b. Neither Moi nor Chihuly made objective manifestations of
               a shared intent to be co-authors ................................................. 15

           c. Moi's contributions are not responsible for the works'
               audience appeal .......................................................................... 16

    C. The Statute of Limitations Bars Claims Related to Works Produced Before
        February 21, 2014 ..................................................................................... 16

        1. Chihuly Expressly Repudiated Moi's Authorship When the Works
           Were Produced .................................................................................. 17

        2. Moi's Equitable Defenses Fail Because He Was Always Aware of
           the Facts Supporting His Claims ..................................................... 18

    D. Moi's Accounting and VARA Claims Fail for the Same Reason as His
        Copyright Claim ........................................................................................ 19

    E. Moi's Promissory Estoppel Claim Fails as a Matter of Law ................... 19

        1. The Statute of Frauds Bars Moi's Claim ......................................... 20

        2. The Alleged Promise Is Impermissibly Vague ................................ 21

        3. The Alleged Promise Was Merely a Statement of Future Intent ............. 22

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF CONTENTS
(continued)

Page

      4.    Moi Suffered No Detrimental Change in Position.................................. 23

      5.    Moi Is, at Best, Entitled to Compensation for the Value of His Time ...................................................................................................... 23

IV.    CONCLUSION............................................................................................. 24

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aalmuhammed v. Lee*,
202 F.3d 1227 (9th Cir. 2000) ...............................................................9, 13, 15, 17

*ABS Entm't, Inc. v. CBS Corp.*,
908 F.3d 405 (9th Cir. 2018) ..........................................................................11, 12

*Access the USA, LLC v. State*,
No. 75747-4-I, 2018 WL 1709674 (Wash. Ct. App. Apr. 9, 2018), *review
denied*, 191 Wn.2d 1015, 426 P.3d 743 (2018) ...............................................21

*Aillet, Fenner, Jolly & McClelland, Inc. v. U.L. Coleman Co.*,
No. CIV.A. 09-2016, 2012 WL 4450977 (W.D. La. Sept. 25, 2012)......................9

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..............................................................................................8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..............................................................................................8

*Childs v. Microsoft Corp.*,
489 F. App'x 224 (9th Cir. 2012) .........................................................................23

*Consumer Health Info. Corp. v. Amylin Pharm., Inc.*,
819 F.3d 992 (7th Cir. 2016) ...............................................................................17

*DC Comics v. Towle*,
802 F.3d 1012 (9th Cir. 2015) .............................................................................11

*Doron v. E. Wash. Univ.*,
184 Wn. App. 1058 (2014) (unpublished)............................................................21

*Elliott Bay Seafoods, Inc. v. Port of Seattle*,
124 Wn. App. 5, 98 P.3d 491 (2004)..............................................................20, 22

*Erickson v. Trinity Theatre, Inc.*,
13 F.3d 1061 (7th Cir. 1994) .......................................................................9, 11, 13

*Estate of Amaro v. City of Oakland*,
653 F.3d 808 (9th Cir. 2011) ...............................................................................18

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Ford v. Ray*,
130 F. Supp. 3d 1358 (W.D. Wash. 2015)........................................................ passim

*Furkin v. Smikun*,
237 F. App'x 86 (7th Cir. 2007) .................................................................19

*Gibson v. City of Spokane Valley*,
176 Wn. App. 1019 (2013) (unpublished) ..............................................23

*Goldberg v. Cameron*,
482 F. Supp. 2d 1136 (N.D. Cal. 2007) ...................................................18

*Havens v. C & D Plastics, Inc.*,
124 Wn.2d 158, 876 P.2d 435 (1994) ..............................................20, 24

*Heger v. Kiki Tree Pictures, Inc.*,
No. CV 17-03810 SJO (EX), 2017 WL 5714517 (C.D. Cal. July 24, 2017) ........................13

*Howard v. State of Wash.*,
No. C04-5474RBL, 2006 WL 691798 (W.D. Wash. Mar. 10, 2006), *rev'd and
remanded on other grounds*, 254 F. App'x 576 (9th Cir. 2007).............................23

*Intel Corp. v. Hartford Accident & Indem. Co.*,
952 F.2d 1551 (9th Cir. 1991) .................................................................8

*Jones v. Best*,
134 Wn.2d 232, 950 P.2d 1 (1998).........................................................23

*Kim v. Dean*,
133 Wn. App. 338, 135 P.3d 978 (2006) ..............................................24

*Kwai Fun Wong v. Beebe*,
732 F.3d 1030 (9th Cir. 2013), *aff'd*, 135 S. Ct. 1625 (2015) ................................18

*Lapo v. Avalon Music, Inc.*,
106 Wn. App. 1034 (2001) (unpublished) ..............................................23

*Lectus, Inc. v. Rainier Nat'l Bank*,
97 Wn.2d 584, 647 P.2d 1001 (1982).....................................................21

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

*Lehman v. United States*,
    154 F.3d 1010 (9th Cir. 1998) ..............................................................................18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ..............................................................................................8

*Meissner v. Simpson Timber Co.*,
    69 Wn.2d 949, 421 P.2d 674 (1966) ...............................................................22, 23

*Moberg v. Terraqua, Inc.*,
    199 Wn. App. 1059 (2017) (unpublished) ...........................................................21

*N. Am. Thought Combine, Inc. v. Kelly*,
    No. 01 CIV. 8112 (LMM), 2003 WL 355237 (S.D.N.Y. Feb. 18, 2003) ...........9, 11

*Nelson v. BNSF Ry. Co.*,
    No. C10-5328BHS, 2011 WL 1637926 (W.D. Wash. Apr. 29, 2011) ...................18

*Nelson v. Pima Cmty. Coll.*,
    83 F.3d 1075 (9th Cir. 1996) ................................................................................8

*Nguyen v. IBM Lender Bus. Process Servs. Inc.*,
    No. CV11-5326RBL, 2011 WL 6130781 (W.D. Wash. Dec. 8, 2011) ..................24

*Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*,
    531 F.3d 962 (9th Cir. 2008) ..........................................................................11, 16

*Rutherford v. Chase Bank, N.A.*,
    No. 2:13-CV-01175-MJP, 2014 WL 4540066 (W.D. Wash. Sept. 11, 2014) ........20

*Taylor v. Universal Music Corp., Inc.*,
    No. CV 13-06412 RGK, 2014 WL 12607685 (C.D. Cal. Mar. 10, 2014) ..............14

*Thomson v. Larson*,
    147 F.3d 195 (2d Cir. 1998) ............................................................................14, 16

*Waltner v. Aurora Loan Servs., L.L.C.*,
    551 F. App'x 741 (5th Cir. 2013) .........................................................................24

*Wash. Educ. Ass'n v. Wash. Dep't of Ret. Sys.*,
    181 Wn.2d 212, 332 P.3d 428 (2014) ...............................................................20, 21

CHIHULY'S MOTION FOR SUMMARY JUDGMENT
(No. 2:17-cv-00853-RSL)– v

LEGAL142959698.10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Page(s)

*Weber v. Geffen Records, Inc.,*
63 F. Supp. 2d 458 (S.D.N.Y. 1999)......................................................................19

*White Oak Partners II, LLC v. Heritage Fin. Corp.,*
No. C14-5911 RBL, 2015 WL 6739015 (W.D. Wash. Nov. 4, 2015) ...................20

*Zuill v. Shanahan,*
80 F.3d 1366 (9th Cir. 1996) ........................................................................17, 18

**STATUTES**

17 U.S.C. § 101 ...........................................................................................................13

17 U.S.C. § 102(a) .........................................................................................................9

17 U.S.C. § 106A .........................................................................................................19

17 U.S.C. § 507(b) .......................................................................................................17

RCW 19.36.010 ...........................................................................................................21

**RULES**

Fed. R. Civ. P. 56(a) .....................................................................................................8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# I.    INTRODUCTION

In this copyright and quasi-contract dispute, Plaintiff Michael Moi ("Moi") seeks a declaration that he is a joint author with Dale Chihuly ("Chihuly") of hundreds of drawings that he cannot identify and an award of more than $20 million based on an undocumented and uncorroborated claim that he would be "taken care of."  Moi admits that the drawings were, were intended to be, and were presented as, Chihuly's works; that Moi never expected attribution; and that Moi's contributions are indistinguishable, of no independent value, and unidentifiable to anyone, including himself.  As to the alleged promise, Moi cannot specify any material term, including when the promise was made or when and how it would be fulfilled, nor can he say how he has been harmed by his purported reliance thereon.

On this record, which Moi has had every opportunity to develop, the entire case should be dismissed on summary judgment.  Moi's copyright-related claims fail because most of them are time-barred and he cannot identify the specific contributions to Chihuly's work that would entitle him to be declared a joint author or otherwise clear the high hurdles of proving joint authorship.  Moi's promissory estoppel claim fails because Washington law refuses to enforce vague, unwritten, and undefined expressions of intent to take future action that cannot be fulfilled in one year.

This motion is supported by the declarations of Leslie J. Chihuly ("Chihuly Decl.") and William C. Rava ("Rava Decl."), the exhibits attached thereto, and the records in this case.

# II.    STATEMENT OF FACTS

## A.    Dale Chihuly, His Art, and the Studio

Chihuly is a global art icon and has been a generative, groundbreaking creative artist for over a half century.  Chihuly Decl., Exs. A-C.  His work in glass, drawing, and sculpture is world-renowned, having transformed the canals of Venice and marveling millions in Jerusalem's citadel.  *Id*.; *see also* Rava Decl., Ex. L.  Today, Chihuly's work abounds across nations,

CHIHULY'S MOTION FOR SUMMARY JUDGMENT
(No. 2:17-cv-00853-RSL)– 1

LEGAL142959698.10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

cultures, and settings, and more than 200 museums feature his art in their permanent collections. Chihuly Decl., Exs. A-C.

In the 1960s, Chihuly enrolled at the University of Wisconsin in the first glassblowing program offered in U.S. higher education. *Id*., Ex. B. He then earned an MFA at the Rhode Island School of Design ("RISD") and, on a Fulbright Fellowship, learned about team glassblowing from Italian masters. *Id*. Utilizing this concept, Chihuly directed the glassblowing programs at RISD and co-founded the Pilchuck Glass School in Stanwood, Washington. *Id*. Since then, Chihuly has been awarded a dozen honorary doctorates, two fellowships from the National Endowment for the Arts, and numerous other accolades. *Id*., Ex. C.

In the late 1970s, Chihuly sustained debilitating injuries in two serious accidents, the first blinding his left eye and the second severely dislocating his shoulder. *Id*., Ex. B. Chihuly also suffers from severe and sometimes debilitating mental illness. Rava Decl., Ex. K. In part for these reasons, for more than three decades Chihuly has used and relied on assistants in his studio to support his work. Chihuly Decl. ¶ 5. This is nothing new. For more than a thousand years, many well-known artists have used assistants to support their efforts—Michelangelo used assistants to paint the Sistine Chapel; Andy Warhol had his "Factory;" and, among others, Damien Hirst, Kehinde Wiley, and Jeff Koons currently employ teams of assistants to support their abundant artistic endeavors. *Id*.; Rava Decl., Ex. M.

Chihuly founded Chihuly, Inc. (the "Studio") in 1985, when he could first afford to invest in his own glassblowing studio and hire a team to implement his visions and designs. Chihuly Decl. ¶ 2. Today, the Studio's operations include museum and garden exhibitions, gallery shows, sales, and philanthropy around the globe. *Id*.

CHIHULY'S MOTION FOR SUMMARY JUDGMENT
(No. 2:17-cv-00853-RSL) – 2

LEGAL142959698.10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**B.     Chihuly's Drawings**

From the beginning of his career, drawing[1] has been an integral part of Chihuly's art.  *Id.* ¶ 4, Ex. D at 13.  He uses two-dimensional drawings to convey ideas and instructions to his glassblowing and other teams working on three-dimensional works.  *Id.* ¶ 4.  He also draws his own "established archetypes in his glass oeuvre,"—including Baskets (vessels), Floats (closed circles), Ikebana (vase forms), and Reeds (vertical forms)—with his drawings informing his glass work, and vice versa.  *Id.* ¶ 4, Ex. D at 16.

"By restricting imagery to a group of archetypes that he knows, not just by heart but in the very sinews of his body," Chihuly intimately ties himself to the drawings and advances and riffs on his well-established artistic identity and unique artistic vocabulary.  *Id.*, Ex. D at 16.

Chihuly's signature is integral to his drawings and sets them apart, "act[ing] as an important linear component of each composition . . . an oblique, coded self-portrait as well as heightened punctuation mark."  *Id.*, Ex. E at 32.  It also affirms his ownership of the creation of the work; by signing, Chihuly "take[s] possession of a personal visual territory" and "assert[s] a unity between his work and himself."  *Id.*, Ex. D at 18.

As with his glass art, Chihuly draws with a team of assistants who he trains.  *Id.* ¶¶ 5-7. During the periods at issue, most drawing sessions occurred on weekends, when the Studio was typically quiet, permitting increased focus and efficiency.  *Id.* ¶ 6.  In addition to the physical space, the Studio provides all physical materials.  *Id.*  Assistants typically help to set up, distribute and refresh the supplies (acrylic and watercolor paints, buckets, mops, brushes, bottles, slurries, dust, charcoal, etc.), move the surfaces (paper, acrylic, etc.), and lay down background colors, textures, and other elements.  *Id.* ¶ 8.  Although Chihuly's level of contemporaneous engagement can, at times, vary—depending largely on his health—in all events, assistants help to produce Chihuly's works, steeped in decades of Chihuly's carefully curated glass and drawing

---

[1] Though "referred to as . . . 'drawing,' . . . like many thousands of other such acrylic works, . . . it would be more accurately described as painting on paper."  Chihuly Decl., Ex. D at 13. Consistent with this usage, Chihuly's two-dimensional works are referred throughout this motion as "drawings."

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   oeuvre. *Id.* ¶ 9.  And Chihuly is always the final arbiter; he decides whether to sign or discard

2   each work, and sometimes rejects pieces long after they are produced. *Id.* ¶ 10.

3       When dry, works are registered and photographed before being transferred for storage.

4   *Id.* ¶ 12.  The Studio tracks basic information for each work, including the year of production,

5   size, and medium. *Id.* ¶ 11.  Although the Studio tracks the day that works are registered, it does

6   not track the date of creation, or which assistants were present at particular sessions. *Id.*

7       Between 1999 and 2014, Chihuly and his team of assistants produced approximately

8   7,600 drawings. *Id.* ¶ 16.  Some have been retained in Chihuly's permanent personal archive;

9   some have been sold; some have been exhibited; some have been gifted; some have been loaned;

10  and many remain in the Studio's inventory. *Id.*  Chihuly and the Studio staff also periodically

11  review and cull from the inventory works with which he no longer is satisfied. *Id.* ¶ 15.  Such

12  works are no longer loaned, offered for sale, or otherwise displayed and are, in some cases,

13  destroyed. *Id.*  Of the works produced between 1999 and 2014, approximately 500 no longer are

14  in existence, having either been destroyed, retired, or otherwise lost or discarded. *Id.* ¶ 16.

15  **C.     Michael Moi and This Lawsuit**

16      Moi is a handyman and builder who has worked in construction since 1982.  Rava Decl.,

17  Ex. E (Deposition of Michael Moi) (hereinafter "Moi Dep.") at 6:10-18.  Moi met Chihuly in

18  1999 through Billy O'Neill, a Studio assistant.  Compl. (Dkt. # 9) ¶ 3.1.  After this initial

19  meeting, Defendants began to periodically engage Moi for construction-related work, for which

20  Moi was always promptly paid. *Id.* ¶ 3.2; Moi Dep. at 6:19-23, 7:4-12.  Though Moi had other

21  clients, he did "a ton" of construction work for Defendants and, between 2012 and 2015, the

22  Studio was his primary client.  Moi Dep. at 7:9-8:10.

23      Eighteen years after first going to work for Chihuly, on February 16, 2017, Moi sent

24  Defendants a letter claiming rights in unspecified drawings produced between 1999 and 2015.

25  He stated that he was present at, and participated in, drawing sessions and, therefore, was entitled

26  to payment of $21 million.  He threatening to file suit if Defendants did not sign a tolling

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  agreement for Moi's copyright claims by February 21.  Rava Decl. ¶ 2.  Defendants agreed to toll

2  the statute of limitations on Moi's claims as of that date.  *Id.*, Ex. A.  On March 29, Moi sent

3  Defendants a draft complaint asserting claims of joint authorship under the Copyright Act, and

4  promissory estoppel based on Defendants' alleged failure to "take care of" Moi.  *Id.* ¶ 3.  After

5  determining that there was no basis for Moi's claim of co-authorship, Defendants declined to pay

6  Moi and, on May 30, filed his Complaint.  *Id.*

7       Chihuly has no recollection—and the Studio has no record—of Moi's attendance at any

8  session, or involvement with any drawings.  Rava Decl., Ex. H (Deposition of Dale Chihuly) at

9  4:20-25; Chihuly Decl. ¶ 17.

10  ### 1.     Moi's Joint Authorship Claim

11       Moi alleges that he began attending drawing sessions in 1999 at Billy O'Neill's

12  invitation, and that—except for 2005 and 2006, when Moi was grieving his first wife's death—

13  he continued to attend sessions periodically until 2014.  Compl. (Dkt. # 9) ¶¶ 3.1, 3.3, 3.15, 3.16.

14  Moi cannot say how many sessions he attended between 1999 and 2005, but estimates he

15  attended sessions "four to five times a year" between 2007 and 2015.  Moi Dep. at 95:11-20.

16       Moi had no drawing experience prior to attending the drawing sessions.  In his words, he

17  "didn't really know what [he] was doing" until Chihuly "showed [him]," *id.* at 17:12-15, "never

18  painted for [him]self," and acknowledges that "the only style—the style of painting I know how

19  to do is exactly what I was taught to do and I learned to do [at the sessions], and . . . I would not

20  do it outside of the studio," *id.* at 67:2-9.

21       Moi admits he never sought attribution for any works because he understood that he was

22  making his contributions "strictly for Dale," and believed that the drawings belonged solely to

23  Chihuly.  *Id.* at 94:10-16, 133:7-12.  Between 1999 and 2015, Moi knew that Chihuly signed,

24  marketed, and offered all of the works as the sole author.  *Id.* at 94:19-21, 172:3-18.  Moi had no

25  involvement in determining whether works were destroyed or marketed and offered for sale.

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Moi's Complaint, though 19 pages long, describes his alleged contributions in the barest detail: Moi "pour[ed] paint directly onto [a] long line of blank paper and beg[a]n to 'mop out' background colors[,]" "'burn[ed]' and 'dust[ed]' metallic pigments on backgrounds," "conceived of" and "created 'faces' for" a "'Pumpkin' series," and "painted backgrounds and added drips, dashes and lines to innumerable"—and unidentified—"drawings, paintings, and Plexiglass panels." Compl. (Dkt. # 9) ¶¶ 3.5, 3.9, 3.16, 3.21.

Discovery uncovered little additional detail. Moi mopped backgrounds as Chihuly instructed him—"absolutely" doing as he was told, Moi Dep. at 70:16-19—such that there was no identifiable feature of his backgrounds that would allow them to be distinguished from those completed by others, *id.* at 75:11-21, 92:3-7. Moi, like other assistants, "'burn[ed]' and 'dust[ed]'" backgrounds by heating them with a roofing torch until they "beg[an] to bubble and crackle." *Id.* at 74:3-8. And the "Plexiglass panels" or "Plexi Series" Moi contributed to were "relatively the same" as Chihuly's prior work, *id.* at 126:23-127:13, and merely reproduced the archetypal forms for which Chihuly is famous: "there were a lot of floats, a lot of baskets, and a lot of reeds, primarily all the same [as Chihuly's prior works], and much larger," *id.*

Since August 2017, using written discovery, attorney conferences, and depositions, Defendants have attempted to learn what specific works Moi claims to have authored, and the specific contributions he claims to have made. Notwithstanding these repeated efforts, Moi has been unable to specify these foundational details of his core legal claim. Rava Decl. ¶¶ 4-8.

Instead, Moi has provided only a list of works that he "identified in a good faith effort . . . to identify Works that—to the best of his recollection—were created during painting/drawing sessions that he participated in, and therefore, was integrally involved in and substantially contributed to the creation of such works" (the "Identified Works"). *Id.*, Ex. D. But Moi acknowledged that he does not know when he attended sessions, or when any specific works were made. Moi Dep. at 139:24-140:3, 142:12-143:11, 153:20-154:11. And he clarified that he is unable to determine with certainty whether he contributed to any particular work, and that the

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1  Identified Works are simply those that he believed he "definitively could have done" because

2  they "showed a style of paintings that I was pretty certain with that I was part of." *Id.* at 72:21-

3  25, 187:20-24. When presented with images of the Identified Works, Moi could not determine

4  whether he had made any contribution to them, and in one case expressly denied having done so.

5  *Id.* at 134:12-136:21; Rava Decl. ¶¶ 12-13.

6      Discovery is now closed, and Moi has neither identified the works he claims to have

7  authored, nor his specific contributions to them. Rava Decl. ¶ 15, Ex. D.

8      ## 2.    Moi's Promissory Estoppel Claim

9      Moi initially attended the drawing sessions without any expectation of being

10 compensated because "it was kind of fun," but claims that, at some unknown time, Chihuly

11 assured Moi that he would be "taken care of." Moi Dep. at 17:16-19:25. Although Moi cannot

12 recall the details, he claims that Chihuly provided such assurance on three separate occasions.

13 First, after Moi "was being called in more and more to help," he asked Chihuly whether he

14 would be paid and was told he'd be "taken care of." *Id.* at 19:22-25. Second, at a subsequent

15 unknown time, Chihuly allegedly said the Studio's "accounting has a record of all this, and . . .

16 when the time comes . . . you'll be taken care of and paid for what you've done." *Id.* at 21:8-13.

17 And third, after Moi "did a year end cleaning at their studio" and "paid special attention to

18 Chihuly's office and to his bathroom," Moi claims Chihuly "reassured me that I would be taken

19 care of for the work that I do outside of my construction." *Id.* at 23:20-24:4-8.

20     Moi does not recall the years these conversations took place, much less the specific dates.

21 Nor can he specify the terms by which he would be "taken care of" because they were never

22 discussed. There was never any mention of when Moi would be paid, *id.* at 49:17-19, "how

23 much" Moi would be paid, *id.* at 26:11-24, 28:4-30:6, 31:13-16, 50:24-51:4, 173:16-21, or "any

24 terms with respect to what that amount would be," *id.* at 29:7-10. There was no document

25 memorializing this purported agreement. *Id.* at 31:19-23. And Moi neither kept records

26 regarding his alleged contributions, *id.* at 41:11-13, 42:23-24, nor made any attempt to verify that

CHIHULY'S MOTION FOR SUMMARY JUDGMENT
(No. 2:17-cv-00853-RSL) – 7

LEGAL142959698.10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1  the Studio kept records of his involvement because he believed he "couldn't go tell them" that he

2  was involved, *id.* at 21:14-16.  Moi admits that, on his understanding, Chihuly alone would

3  decide how and to what degree he would compensate Moi.  *Id.* at 175:18-176: 6.

4      Between 1999 and 2015, Moi declared bankruptcy and applied for loans that required

5  disclosure of all financial assets.  *Id.* at 174:3-1755, 176:19-177:12.  He never disclosed the

6  alleged promise, because it was too speculative and indefinite to calculate.  *Id.* at 175:1-17.  Nor

7  did he disclose that he was a co-author of valuable Chihuly works of art.  *Id*. at 177:1-12.

8  ### III.    ARGUMENT

9  **A.    Summary Judgment Standard**

10      "The court shall grant summary judgment if the movant shows that there is no genuine

11  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

12  R. Civ. P. 56(a).  All reasonable inferences from the evidence should be drawn in the non-

13  moving party's favor, but "the mere existence of a scintilla of evidence . . . will be insufficient;

14  there must be evidence on which the jury could reasonably find for the [non-moving party]."

15  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Matsushita Elec. Indus. Co. v. Zenith*

16  *Radio Corp.*, 475 U.S. 574, 586 (1986) (Opposing party "must do more than simply show that

17  there is some metaphysical doubt as to the material facts.").  "[M]ere allegation and speculation

18  do not create a factual dispute for purposes of summary judgment."  *Nelson v. Pima Cmty. Coll.*,

19  83 F.3d 1075, 1081-82 (9th Cir. 1996).  To defeat a motion for summary judgment, the non-

20  moving party must go beyond the pleadings to "present significant probative evidence tending to

21  support its claim or defense."  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551,

22  1558 (9th Cir. 1991) (citation omitted).  Failure of proof on any element of a claim requires its

23  dismissal.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

24  **B.    Moi's Copyright Claim Fails as a Matter of Law**

25      Moi seeks a declaration of rights as a joint author of Chihuly's artwork under the

26  Copyright Act.  Compl. (Dkt. # 9) ¶ 4.3.  Moi's claim fails because he: (1) cannot identify the

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

works he claims to have authored; (2) cannot identify his specific independently copyrightable contributions to any work; and (3) cannot satisfy the requirements of joint authorship. Dismissal is appropriate for any of these three independent reasons.

### 1. Moi Cannot Identify the Works at Issue or His Alleged Contributions

Copyright protection only attaches to "original works of authorship." 17 U.S.C. § 102(a); *see also Aalmuhammed v. Lee*, 202 F.3d 1227, 1231 (9th Cir. 2000). It should go without saying that Moi cannot claim rights as an author without identifying the works at issue and his contributions to them. *See Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1072 (7th Cir. 1994) (affirming dismissal of joint authorship claim where plaintiffs "could not identify specific contributions that they had made to [the defendant's] works"); *N. Am. Thought Combine, Inc. v. Kelly*, No. 01 CIV. 8112 (LMM), 2003 WL 355237, at *2 (S.D.N.Y. Feb. 18, 2003) (dismissing joint authorship claim for failure "to identify: . . . the joint works that were allegedly created and the specific contributions of the relative parties"); *Aillet, Fenner, Jolly & McClelland, Inc. v. U.L. Coleman Co.*, No. CIV.A. 09-2016, 2012 WL 4450977, at *3 (W.D. La. Sept. 25, 2012) ("The jurisprudence is clear that failing to identify specific contributions to a work is fatal to a claim of joint authorship.").

Moi's claim must be dismissed because he has failed to identify the works he claims to have authored (much less his contributions to them) and admits he is incapable of doing so.

### a. Moi cannot identify the works he claims to have co-authored

Moi admits that "nobody would know" which works he allegedly co-authored, Moi Dep. at 80:3-5, and found the suggestion that he identify these works "pretty offensive," *id.* at 201:23-202:6. When pressed, Moi bristled that Defendants were "trying to lock me up into something that I really can't answer well." *Id.* at 86:3-7. And in response to Defendants' repeated requests that Moi identify the works at issue, Moi could only make "a good faith effort . . . to identify Works that—to the best of his recollection—were created during painting/drawing sessions that

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    he participated in, and therefore, was integrally involved in and substantially contributed to."

2    Rava Decl., Ex. D at 6.  But Moi admits this "good faith effort" was fruitless.

3        First, Moi cannot possibly "identify Works . . . created during painting/drawing sessions

4    that he participated in" because he does not know which drawing sessions he attended, or at

5    which sessions any works were produced.  Moi Dep. at 44:4-10, 139:24-140:3, 142:12-17,

6    153:20-154:11.

7        Second, when presented with images of the Identified Works, Moi could not determine

8    whether he had contributed to them, and in one case expressly denied having done so.  *Id.* at

9    134:12-136:21; Rava Decl. ¶¶ 11-13.

10       Third, Moi admits that the Identified Works are merely those "that showed a style of

11   painting" Moi believes he ***could*** reproduce.  Moi Dep. at 72:21-25 (emphasis added).  As a

12   result, Moi cannot determine whether he contributed to any specific work, but only whether he

13   might be ***capable of*** doing so.  *Id.* at 137:21--138:3 ("I very well could have done these, because

14   this is exactly how what I—how we were taught to do it.  Q. . . . Can you say here today, under

15   oath, that you actually painted these two[?] . . . A. No, I told you that I can't do that.").[2]

16       Finally, Moi admits that, to determine which works he claims to have co-authored, he

17   would need access to information that does not exist: both the specific date on which each work

18   was produced and records of the dates he attended drawing sessions.  *Id.* at 44:13-14, 44:4-19,

19   84:11-19.  But as Moi acknowledged, there is no record of the specific date that any painting was

20   produced.  *Id.* at 139:24-140:3; *see also* Chihuly Decl. ¶ 11.  And there is no document

21   indicating Moi *ever* attended a drawing session, let alone when.[3]  Chihuly Decl. ¶ 17.

---

22       [2] *See also* Moi Dep. at 187:20-24 ("I definitely could have done" the Identified Works.); *id.* at 165:7-9 ("I

23   may have or I may not have, because if it is something for the type of work I did, I may have done it."); *id.* at 138:8-
     9 ("I may have done these (indicating).  It's very similar to all the work I've always done."); *id.* at 138:15-17 ("You

24   want me to go through every one of these and say that?  I'm going to say the same thing, because I can't do it."); *id.*
     at 141:16-20: ("Q. . . . If we went through more pages, right, you might be able to tell us some that you didn't paint?

25   You might be able, some you might have?  A. Yes."); *id.* at 141:3-8 ("Q. . . . Do you see any that you absolutely are
     positive, under oath, you did paint them? A. . . . I cannot answer, absolutely.").

26       [3] Moi also stated in his deposition that he is incapable of identifying the works at issue without reviewing
     Dale Chihuly's and Billy O'Neill's calendar entries to identify the paintings at issue.  Moi Dep. at 44:17-19, 138:12-

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    The Court should grant summary judgment dismissing Moi's copyright claim because he

2    has not, and cannot, identify the works he claims to have authored.

### b.   Moi cannot identify his alleged contributions

4    To survive summary judgment, Moi must show, on a work-by-work basis, that he made

5    specific, independently copyrightable contributions that support his claim.  *Richlin v. Metro-*

6    *Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 968 (9th Cir. 2008) ("A 'joint work' requires each

7    author to make 'an independently copyrightable contribution.'") (citation omitted); *Kelly*, 2003

8    WL 355237, at *2; *Erickson*, 13 F.3d at 1072.

9    Here, Moi's need to identify his alleged contributions with specificity takes on

10    heightened importance because the works at issue are derivative of Chihuly's prior drawings.  "A

11    'derivative work' is defined in the Copyright Act as a work 'based upon one or more preexisting

12    works' that 'recast[s], transform[s], or adapt[s]' a preexisting work and 'consist[s] of editorial

13    revisions, annotations, elaborations, or other modifications which, as a whole, represent an

14    original work of authorship.'"  *ABS Entm't, Inc. v. CBS Corp.*, 908 F.3d 405, 414 (9th Cir. 2018)

15    (citing 17 U.S.C. § 101).  And "the creator of the derivative work has a copyright only as to

16    those original aspects of the work that the derivative creator contributed, and only to the extent

17    the derivative creator's contributions are 'more than trivial.'"  *DC Comics v. Towle*, 802 F.3d

18    1012, 1023 (9th Cir. 2015).

19    Moi admits that his alleged contributions merely reproduced Chihuly's well-established

20    archetypal forms, Moi Dep. at 73:9-13, 126:23-127:13, 162:18-163:11, such that they are

21    derivative works, *ABS Entm't*, 908 F.3d at 414.  As a result, Moi must not only identify his

22    contributions to the works at issue, he must demonstrate how those contributions add original

23    and non-trivial creative expression to Chihuly's extensive, well-established body of work.

24

---

25    14.  Five months before the deposition, however, Defendants had produced all calendar entries in its possession
conceivably related to any drawing sessions. Rava Decl. ¶ 5.  When presented in his deposition with these calendar

26    entries, Moi admits that he still could not identify the works he claims to have authored.  Moi Dep. at 147:14-
152:15, 153:9-17, 158:4-15.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    Moi has failed to identify *any* specific contributions to a specific work, let alone

2    independently copyrightable ones.  Rava Decl. ¶ 15, Ex. D.  And, again, Moi's testimony shows

3    he is fundamentally incapable of doing so.

4    First, because Moi cannot identify any specific works at issue, he necessarily cannot

5    identify his specific contributions to them.

6    Second, Moi's alleged contributions are indistinguishable from those of Chihuly's other

7    assistants.  Moi never completed a work by himself, often working with several other assistants,

8    Moi Dep. at 94:5-6, 100:1-10, 133:2-8, and he cannot distinguish his contributions from others'

9    because "they're all the same.  They're all the same.  They all look the same," *id.* at 136:6-7.  *See*

10   *also id.* at 44:10-13, 74:11-21, 99:6-13.[4]

11   Third, Moi's alleged contributions were not original.  By Moi's own admission, his work

12   was "just a copy" of Chihuly's prior drawings, *id.* at 166:16-167:5, that he was only capable of

13   reproducing "exactly [as he] was taught to do" by Chihuly, *id.* at 67:5-9.

14   The Court should grant summary judgment dismissing Moi's copyright claim because he

15   has not, and cannot, identify any specific, independently copyrightable contribution to any work.

16   **2.    Moi Cannot Establish the Required Elements of "Joint Authorship"**

17   Moi's inability to identify either the works at issue or his independently copyrightable

18   contributions is fatal to his copyright claim and requires dismissal by itself.  Even if Moi were

19   capable of clearing these hurdles, however, dismissal is appropriate because he cannot satisfy the

20   strict requirements of joint authorship.

21   "[A]uthorship is not the same thing as making a valuable and copyrightable

22   contribution"; rather the "author" of a work is "the person to whom the work owes its origin and

23   who superintended the whole work, the 'master mind.'"  *Aalmuhammed*, 202 F.3d at 1232-33

24

25   _____

     [4] Although Moi claims that he "burned" paintings with a roofing torch "pretty heavy" such that he might be
     able to distinguish drawings he had burned from those burned by another assistant, Moi Dep. at 66:18-21, he admits

26   he did not witness all burns performed by other assistants, *id.* at 170:8-13, and that he cannot be certain of his
     identification, *id.* at 77:16-19.

CHIHULY'S MOTION FOR SUMMARY JUDGMENT
(No. 2:17-cv-00853-RSL) – 12

LEGAL142959698.10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

(citation omitted).  The Ninth Circuit has expressly warned against a rule of law that would give

rights to "'overreaching contributors' . . . and deny sole authors 'exclusive authorship status

simply because another person render[ed] some form of assistance.'"  *Id.* at 1235 (citation

omitted).  Because "[c]laimjumping by research assistants, editors, and former spouses, lovers

and friends would endanger authors who talked with people about what they were doing, if

creative copyrightable contribution were all that authorship required," *id.* at 1235-36, "[t]he

Ninth Circuit Court of Appeals has set forth several factors that are among the criteria to be

weighed when determining a claim of co-authorship under § 101:"

> (1)     "whether the claimed author 'superintended' the work by exercising control";
>
> (2)     "whether the parties made 'objective manifestations of a shared intent to be coauthors'"; and
>
> (3)     "whether 'the audience appeal of the work turns on both contributions and the share of each in its success cannot be appraised.'"

*Ford v. Ray*, 130 F. Supp. 3d 1358, 1362 (W.D. Wash. 2015) (J. Lasnik).  Moi cannot satisfy

these factors.

### a.     Moi did not exercise sufficient control

To show that he exercised control necessary to establish authorship, Moi must show that

he had "superintendence of the work" sufficient to be considered the work's "inventive or master

mind." *Aalmuhammed*, 202 F.3d at 1235.  Courts regularly reject claims of joint authorship

where the claimant lacked "supervisory powers" or where another determined whether the

contributions would be accepted or rejected.[5]

---

[5] *See Ford*, 130 F. Supp. 3d at 1363 (holding that plaintiff lacked sufficient control where "it was defendant who possessed and exercised control over the final product"); *Heger v. Kiki Tree Pictures, Inc.*, No. CV 17-03810 SJO (EX), 2017 WL 5714517, at *5 (C.D. Cal. July 24, 2017) ("However significant Heger's contributions may have been[,] . . . absent factual allegations that he had 'supervisory powers over the [film],' the Court cannot plausibly infer that Heger was the 'inventive or master mind' of the film."); *Taylor v. Universal Music Corp., Inc.*, No. CV 13-06412 RGK (AJWx), 2014 WL 12607685, at *4 (C.D. Cal. Mar. 10, 2014) (allegation that plaintiff "participated in" a recording session and "performed all the instrumental tracks on the Recording" did not establish sufficient control to be considered a co-author); *cf. Erickson*, 13 F.3d at 1071–72 (contributor was not co-author where work at issue was "based on a work that Ms. Erickson had largely completed before Trinity actors improvised

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Chihuly, not Moi, exercised this control, and Chihuly, not Moi, was unquestionably the "mastermind" behind the works. Chihuly superintended the entire drawing process, developing the concepts, artistic vocabulary, and techniques, providing the supplies and venue, training assistants to help him realize his artistic vision, and making the final decision about which works would be kept and which discarded. Chihuly Decl. ¶¶ 6-10. Any works that did not satisfy Chihuly, for whatever reason, were discarded during or after drawing sessions, and Defendants have undertaken additional efforts to cull drawings and refine the Studio's inventory. *Id*. ¶¶ 10, 15. Through this process, Chihuly "retained and intended to retain at all times sole decision-making authority as to" whether any assistant contributions would be accepted or discarded. *Cf. Thomson v. Larson*, 147 F.3d 195, 203 (2d Cir. 1998) (contributor did not exercise sufficient decisionmaking authority to be co-author where "the question whether any contribution she might make would go into the script was within [the author's] sole and complete discretion").

Moi, in contrast, did what Chihuly instructed him to do—he made "cop[ies]" of Chihuly's prior artwork, Moi Dep. at 166:16-167:5, "exactly [as he] was taught" by Chihuly, *id.* at 93:9-12. *See also generally supra* Section III.B.1.b. Moi had no role in the disposition of Chihuly works, and no knowledge regarding, much less input into, whether the works were discarded, destroyed, loaned, displayed, or offered for sale. Moi Dep. at 71:12-15, 93:17-23.

This Court considered an analogous situation in *Ford v. Ray*, 130 F. Supp. 3d 1358. There, the plaintiff alleged that he "programmed a number of drum tracks and recorded them on a 3.5 floppy diskette, which he then gave to defendant" and that the defendant incorporated these drum tracks into a finished song. *Id.* at 1363. The Court found that the "control" factor "strongly favors defendant" because "it was defendant who possessed and exercised control over the final product." *Id*. In so holding, the Court noted that "simply making a significant contribution to a work does not make one an author," "[t]he choices regarding whether to use

based on Ms. Erickson's creation" and contributor "conceded that whether his contributions were included and where they went into the compilation were entirely Ms. Erickson's decisions").

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

one of the beats, in whole or in part, and whether to make alterations to the track rested entirely with defendant," and "it was defendant, in collaboration with the producer, who determined how much of plaintiff's [work] would appear in the final version of [the song]." *Id.*

Like in *Ford*, Chihuly exercised control over whether Moi's contributions would be accepted or discarded. Chihuly is the "mastermind" and "superintend[ent]" of the works, while Moi is the "[c]laimjumping . . . assistant." *Aalmuhammed*, 202 F.3d at 1235. Moi, therefore, cannot be considered a co-author of the works.

### b. Neither Moi nor Chihuly made objective manifestations of a shared intent to be co-authors

"The best objective manifestation of a shared intent, of course, is a contract saying that the parties intend to be or not to be co-authors. In the absence of a contract, the inquiry must of necessity focus on the facts." *Aalmuhammed*, 202 F.3d at 1235. No contract exists, and Moi admits that: (1) Chihuly never gave any indication he considered Moi a co-author, Moi Dep. at 87:16-19, 88:11-13, 131:23-132:11, 132:24-133:52; and (2) Moi *never even considered himself* a co-author:

> Q. . . . [O]n those that you did consider yourself to be a creator, did Dale ever say anything to tell you that he agreed with you?
>
> A. And there again, I'm not—you know, I'm not—what I feel maybe, you know, I can't—I don't—no, I don't know.
>
> Q. Did you ever ask him?
>
> A. No. It's not my painting.
>
> Q. Precisely.
>
> A. It's Dale's.

*Id.* at 94:7-16; *see also id.* at 133:7-12 (explaining that Moi never expected attribution because "[w]e were doing [the work] strictly for Dale. We were not doing it for ourselves").

Indeed, Chihuly has repeatedly and consistently repudiated any suggestion that Moi was a co-author of the works. It is undisputed that Chihuly signed the works, and marketed, sold, and

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

displayed the works as their sole author. *Id.* at 94:14-21, 171:10-18, 172:3-18. And Moi admits that he was aware of these actions and knew his alleged contributions were not publicly acknowledged. *Id.*; *see also id.* at 133:3-5. Chihuly's public statements and actions are "persuasive proof" that Chihuly intended the works to "represent h[is] own individual authorship." *Thomson*, 147 F.3d at 203 (citation omitted); *see also Ford*, 130 F. Supp. 3d at 1361 (a work that "when released to the public, did not acknowledge plaintiff as an author and credited him only with lesser contributions" "expressly repudiated plaintiff's current claim of authorship").

### c.   Moi's contributions are not responsible for the works' audience appeal

Because Moi's authorship claim must be based on an independently copyrightable contribution, *Richlin*, 531 F.3d at 968, the Court should consider only such independently copyrightable contributions when assessing Moi's contribution to audience appeal. As discussed above, Moi's contributions, if any, consisted of merely "copy[ing]" Chihuly's famous and established archetypical forms. *See generally supra* Section III.B.2.a. Such copies are not independently copyrightable and, therefore, Moi cannot claim to have contributed to the audience appeal of the works.

Moreover, Moi admits that the audience appeal of the works derived from Chihuly's contributions, and that attribution to Moi would "destroy" the audience appeal of the works. *See* Moi Dep. at 16:18-22; 80:21-23. Defendants' art experts similarly agree that the works' value derives from their association with Chihuly. *See* Rava Decl., Exs. I at ¶ 16.b & J at ¶ 12.

It is undisputed that the audience appeal of the works turns on Chihuly's contributions, not Moi's. Moi, therefore, cannot be considered a joint author of any of the works.

### C.   The Statute of Limitations Bars Claims Related to Works Produced Before February 21, 2014

The Copyright Act provides that "[n]o civil action shall be maintained . . . unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). "[C]laims of co-

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

ownership, as distinct from claims of infringement, accrue when plain and express repudiation of co-ownership is communicated to the claimant, and are barred three years from the time of repudiation." *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996); *see also Aalmuhammed*, 202 F.3d at 1230–31. "Express repudiation" includes "an unequivocal act of ownership" such as signing or publicly taking credit for a work. *Zuill*, 80 F.3d at 1370; *see also Aalmuhammed*, 202 F.3d at 1231; *Ford*, 130 F. Supp. 3d at 1361–62. Repudiation is "communicated" to the plaintiff when "information [is] available to [the] plaintiff," or the plaintiff is aware of such information. *Ford*, 130 F. Supp. 3d at 1361. While "the claimant [must have] notice that his claim of ownership is repudiated or contested," there is no requirement that the plaintiff subjectively understand that the defendant has repudiated his authorship. *Consumer Health Info. Corp. v. Amylin Pharm., Inc.*, 819 F.3d 992, 997 (7th Cir. 2016).

### 1. Chihuly Expressly Repudiated Moi's Authorship When the Works Were Produced

Moi's claims accrued when Chihuly signed the works upon their creation. Chihuly signs every one of his works—an "unequivocal act of ownership" that triggered the statute of limitations. *Zuill*, 80 F.3d at 1370; *Aalmuhammed*, 202 F.3d at 1231; *Ford*, 130 F. Supp. 3d at 1361. After this initial signature, Chihuly "publicly and repeatedly declared himself to be the sole creative force behind the [works]." *Ford*, 130 F. Supp. 3d at 1361. The works were presented as Chihuly's works in marketing materials, videos, and publications, and when displayed in galleries, loaned to museums, and sold to collectors. Chihuly Decl. ¶ 14.

Chihuly "communicated" this repudiation to Moi, who knew that Chihuly signed the works and asserted sole authorship of them. Moi Dep. at 94:14-21, 171:10-18, 172:3-18; *see also Zuill*, 80 F.3d at 1369.

Moi's copyright claim, therefore, accrued when the works were produced. Because Moi did not bring any claim regarding the works prior to the February 21, 2017 tolling agreement, his copyright claim is time-barred for all works created three years before that date.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

### 2. Moi's Equitable Defenses Fail Because He Was Always Aware of the Facts Supporting His Claims

Moi does not appear to dispute that his claim accrued when the Identified Works were initially produced, but argues that "[b]ased upon Defendants' promises and assurances and Plaintiff's justifiable reliance on same," the statute of limitations should be disregarded under the doctrines of equitable estoppel and equitable tolling. Compl. (Dkt. # 9) ¶¶ 4.1.1-4.1.3. Neither doctrine applies, however, because Moi was never ignorant of the necessary facts.

To invoke equitable tolling, Moi must show he was unable to bring a timely claim because he was "ignorant of the true facts." *Lehman v. United States*, 154 F.3d 1010, 1016 (9th Cir. 1998) (quoting *United States v. Hemmen*, 51 F.3d 883, 892 (9th Cir. 1995)). Similarly, equitable estoppel requires that Moi show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way.'" *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013) (citation omitted), *aff'd*, 135 S. Ct. 1625 (2015). "[T]he focus of the equitable estoppel analysis is . . . whether the defendant's . . . misrepresentation deprived the plaintiff of a full understanding of the true facts, and thus, dissuaded the plaintiff from filing the claim at issue within the limitations period." *Estate of Amaro v. City of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011). "[A]s it has been applied in copyright claims, [the doctrine of equitable tolling] has typically involved allegations of inequitable conduct by the defendant that prevented the plaintiff from discovering" the claims at issue. *Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1149-50 (N.D. Cal. 2007) (citation omitted); *see also Nelson v. BNSF Ry. Co.*, No. C10-5328BHS, 2011 WL 1637926, at *5 (W.D. Wash. Apr. 29, 2011) ("[E]quitable estoppel 'comes into play if the defendant takes *active steps to prevent the plaintiff from suing in time*, as by promising not to plead the statute of limitations.'") (citation omitted).

Moi cannot establish the requirements of either doctrine because he has always been aware that Chihuly claimed sole authorship—he knew that Chihuly signed the works, which the Studio then displayed, marketed, and sold as Chihuly's. Moi Dep. at 71:12-22, 172:3-18.

CHIHULY'S MOTION FOR SUMMARY JUDGMENT
(No. 2:17-cv-00853-RSL) – 18

LEGAL142959698.10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

The "promises and assurances" Moi cites relate only to whether he would be *compensated* for his contributions, not whether those contributions made him an author. They, therefore, could not have prevented him from discovering his claim. *See Furkin v. Smikun*, 237 F. App'x 86, 89 (7th Cir. 2007) (promises of future compensation "did not prevent [putative co-author] from filing suit" and did not justify equitable estoppel); *Weber v. Geffen Records, Inc.*, 63 F. Supp. 2d 458, 467 (S.D.N.Y. 1999) ("An entirely unexceptional string of empty promises . . . do not meet the standards of equitable tolling, [and] all the more clearly do not meet the more restrictive standards of equitable estoppel because 'due diligence is not satisfied by passive reliance upon an allegedly deceptive statement.'" (citation omitted)).

Moi's decision to wait 18 years to seek a declaration of his rights is unjustified and unreasonable. Because nothing prevented Moi from recognizing or bringing this claim, the statute of limitations bars Moi from claiming rights in works produced prior to February 21, 2014.

## D. Moi's Accounting and VARA Claims Fail for the Same Reason as His Copyright Claim

Moi's claims for an accounting, Compl. (Dkt. # 9) ¶ 4.4, and for injunctive relief under the Visual Artist's Rights Act ("VARA"), *id.* ¶ 4.5, are purely derivative of his copyright claim and therefore fail for the same reasons. VARA extends rights only to an "author of a work of visual art." 17 U.S.C. § 106A. And Moi's accounting claim is premised on the alleged receipt of "payments for the sale, use, or other exploitation of the Joint Works." Compl. (Dkt. # 9) ¶¶ 4.4.2, 4.4.3. In the absence of a valid copyright claim, these derivative claims necessarily fail. For the reasons discussed above, the Court should grant summary judgment dismissing Moi's VARA and accounting claims. *See generally supra* Sections III.B & C.

## E. Moi's Promissory Estoppel Claim Fails as a Matter of Law

Moi claims that Chihuly made "a promise to pay [Moi] for his services" and, therefore, Moi "is entitled to judgment under a theory of Promissory Estoppel/Detrimental Reliance."

CHIHULY'S MOTION FOR SUMMARY JUDGMENT
(No. 2:17-cv-00853-RSL) – 19

LEGAL142959698.10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Compl. (Dkt. # 9) ¶ 4.2. To succeed, Moi must show: "(1) [a] promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise." *Havens v. C & D Plastics, Inc.*, 124 Wn.2d 158, 171–72, 876 P.2d 435, 442 (1994) (citation omitted). To warrant estoppel, a promise must be "clear and definite." *Wash. Educ. Ass'n v. Wash. Dep't of Ret. Sys.*, 181 Wn.2d 212, 225, 332 P.3d 428, 435 (2014). "A statement of future intent is not sufficient." *Elliott Bay Seafoods, Inc. v. Port of Seattle*, 124 Wn. App. 5, 13, 98 P.3d 491, 495 (2004).

Moi's promissory estoppel claim fails because: (1) it is barred by the statute of frauds; (2) the alleged "promise" was too vague to support relief; (3) the alleged promise was merely a statement of future intent; and (4) Moi did not change his position to his detriment. To the extent Moi's claim can be allowed to proceed, Moi's damages must be limited to compensation for the time that he can prove he spent attending the drawing sessions.

### 1. The Statute of Frauds Bars Moi's Claim

"Washington courts have repeatedly refused to recognize promissory estoppel claims that do not satisfy the statute of frauds." *White Oak Partners II, LLC v. Heritage Fin. Corp.*, No. C14-5911 RBL, 2015 WL 6739015, at *2 (W.D. Wash. Nov. 4, 2015); *see also Rutherford v. Chase Bank, N.A.*, No. 2:13-CV-01175-MJP, 2014 WL 4540066, at *4 (W.D. Wash. Sept. 11, 2014) ("In Washington, the statute of frauds applies to promissory estoppel claims."). The statute of frauds invalidates "[e]very agreement that by its terms is not to be performed in one year from the making thereof." RCW 19.36.010; *see also Lectus, Inc. v. Rainier Nat'l Bank*, 97 Wn.2d 584, 590, 647 P.2d 1001, 1004 (1982) (dismissing promissory estoppel claim where underlying promise could not be performed within one year). Here, Moi clearly understood that the alleged promise could not be performed within one year. He explained that it was impossible to discuss the terms of his allegedly promised payment because of the promise's indefinite duration: "[i]t was not possible to do so. How could I ask for a dollar amount for something in

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

the future.  I did not know . . . . I mean, if in the very beginning, how could Dale have given me a price . . . when I did it for another 15 years?  You tell me how I could do that."  Moi Dep. at 30:19-31:7.

Under Washington law, Moi cannot circumvent the statute of frauds by claiming promissory estoppel.  Because the alleged promise could not have been performed within one year, Moi's claim for promissory estoppel necessarily fails.

## 2.    The Alleged Promise Is Impermissibly Vague

Moi's claim also fails because the alleged promise to "take care of" Moi is too vague and indefinite to be enforceable.  *See Access the USA, LLC v. State*, No. 75747-4-I, 2018 WL 1709674, at *8 (Wash. Ct. App. Apr. 9, 2018) ("[A] promise that is 'vague, general or of indeterminate application' is not enforceable.") (citation omitted), *review denied*, 191 Wn.2d 1015, 426 P.3d 743 (2018); *Wash. Educ. Ass'n*, 181 Wn.2d at 225.  Washington courts have routinely held that lack any discussion or consideration of the relevant terms are unenforceable.  *See Moberg v. Terraqua, Inc.*, 199 Wn. App. 1059 (2017) (unpublished) (alleged promise was "too vague for a court to enforce" where "no formal commitment was ever made, . . .  the terms were not discussed, and the issue was one to be worked out in the future"); *Doron v. E. Wash. Univ.*, 184 Wn. App. 1058 (2014) (unpublished) (alleged promise was not enforceable where the plaintiff "points to no specific time or date when an express promise was made[,] . . . repeatedly conceded he heard no specifics of any promise[,] . . . [and] does not provide testimony as to the specific words used so that one could conclude that the terms and contexts showed an intent to render a binding promise").

Moi admits that "[t]here was no agreement on when [he] would be paid," Moi Dep. at 49:17-19, the amount of payment "was never spoken of," *id.* at 26:11-24, and he "didn't know any terms with respect to what that amount would be," *id.* at 29:7-10.  Instead, the amount of compensation would "be up to [Chihuly]" and Moi "just knew he would take care of [him]."  *Id.* at 176:5-10; *see also id.* at 50:21-23.  Indeed, while Moi declared bankruptcy and filled out

CHIHULY'S MOTION FOR SUMMARY JUDGMENT
(No. 2:17-cv-00853-RSL) – 21

LEGAL142959698.10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

financial disclosures that required him to list his assets, he never disclosed Chihuly's purported promise because it was too indefinite: "I didn't even know what the amount was and when it would be. I just know that he was going to take care of me. So what am I going to list? Oh, Dale Chihuly is going to take care of me one day?" *Id.* at 175:1-5.

As Moi acknowledges, his assertion that Chihuly told him that he would be "taken care of" is too vague and indefinite to be enforceable.

### 3. The Alleged Promise Was Merely a Statement of Future Intent

"A statement of future intent is not sufficient to constitute a promise for the purpose of promissory estoppel. An intention to do a thing is not a promise to do it." *Elliott Bay*, 124 Wn. App. at 13. The promise underlying Moi's promissory estoppel claim is exactly such a statement: Chihuly allegedly told Moi he would be "taken care of for the work that [he] do[es] outside of [his] construction" at an unspecified time, and in an unspecified amount. Moi Dep. at 20:8-12, 21:8-13, 23:20-24:4-8, 132:16-18.

The Washington Supreme Court addressed a comparable situation in *Meissner v. Simpson Timber Co.*, 69 Wn.2d 949, 956, 421 P.2d 674, 679 (1966). In that case the plaintiff had signed over his rights in an invention to the defendant, his employer. At a dinner party, the defendant stated "that the company officers had agreed among themselves to pay him royalties in the event the invention was later licensed." *Id.* at 956. The court found this statement unenforceable, reasoning that "[t]he evidence discloses, at most, that defendant, at one time, had intended to pay royalties to plaintiff, and that this intention was disclosed to him. But an intention to do a thing is not a promise to do it. An 'intention' is something formed in the mind of a man; a 'promise' is an express undertaking or agreement to carry the purpose into effect." *Id.* at 957; *see also Howard v. State of Wash.*, No. C04-5474RBL, 2006 WL 691798, at *6 (W.D. Wash. Mar. 10, 2006) (conditional promise of a raise is a "statement of future intent [and] is not the unequivocal promise necessary to invoke the doctrine of promissory estoppel"), *rev'd and remanded on other grounds*, 254 F. App'x 576 (9th Cir. 2007).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Like the statements at issue in these cases, Chihuly's alleged statements that Moi would be "taken care of" are merely statements of future intent, not the type of "unequivocal promise necessary to invoke the doctrine of promissory estoppel." *Howard*, 2006 WL 691798, at *6.

### 4. Moi Suffered No Detrimental Change in Position

Moi's claim fails because he suffered no "detrimental 'change in position.'" *Jones v. Best*, 134 Wn.2d 232, 240, 950 P.2d 1, 5 (1998), *as corrected* (Feb. 20, 1998); *see also Childs v. Microsoft Corp.*, 489 F. App'x 224, 225 (9th Cir. 2012) (Plaintiff "failed to state a claim for promissory estoppel because he did not plead facts plausibly showing that he detrimentally changed his position in reliance on Microsoft's promises.") To do so Moi must show "resulting reliance, and resulting harm." *Gibson v. City of Spokane Valley*, 176 Wn. App. 1019 (2013) (unpublished). But Moi claims only that Chihuly's alleged promises caused him to attend drawing sessions, Compl. (Dkt. # 9) ¶ 4.2.1, and admits that he never lost money or business as a result of such attendance, Moi Dep. at 170:14-171:9. This is not harm, much less harm sufficient to establish a "detrimental 'change in position' by which [he] would implicate promissory estoppel." *Jones*, 134 Wn. 2d at 240; *see also Lapo v. Avalon Music, Inc.*, 106 Wn. App. 1034 (2001) (unpublished).

### 5. Moi Is, at Best, Entitled to Compensation for the Value of His Time

Chihuly's alleged promise to "take care of" Moi, at best, supports a weak claim for damages based on the value of Moi's time. Promissory estoppel applies where "injustice can be avoided only by enforcement of the [alleged] promise." *Havens*, 124 Wn.2d at 172. "[A] promissory estoppel claim requires a balancing of the equities," and consideration of the "underlying fairness of the circumstances." *Kim v. Dean*, 133 Wn. App. 338, 347, 135 P.3d 978, 983 (2006). For this reason, "the most appropriate damage measure is often reliance (rather than expectation) contract damages." *Nguyen v. IBM Lender Bus. Process Servs. Inc.*, No. CV11-5326RBL, 2011 WL 6130781, at *3 (W.D. Wash. Dec. 8, 2011); *see also Waltner v. Aurora*

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    *Loan Servs., L.L.C.*, 551 F. App'x 741, 745–46 (5th Cir. 2013) ("Damages on a promissory

2    estoppel claim are limited to reliance damages.").

3           By Moi's own account, the terms of his compensation were never discussed and Chihuly

4    made no statements indicating Moi would receive a share Chihuly's profits.  The only action that

5    Moi claims to have taken in reliance on these alleged statements is that he attended "four to five"

6    drawing sessions a year between 2012 and 2015 and some unknown amount during the years

7    prior.  Moi Dep. at 95:11-20.  To the extent these allegations support a claim for promissory

8    estoppel—as discussed above, they do not—the "underlying fairness of the circumstances" only

9    warrants that Moi be compensated for his reliance on the purported promise that he would be

10   "taken care of"—the value of the time he can prove spent attending the drawing sessions.

### IV.    CONCLUSION

12          For the foregoing reasons, the Court should GRANT Defendants' Motion for Summary

13   Judgment and dismiss Moi's claims with prejudice.

15   DATED:  February 5, 2019                    s/ Harry H. Schneider, Jr., WSBA No. 9404
                                                 HSchneider@perkinscoie.com
16                                               William C. Rava, WSBA No. 29948
                                                 WRava@perkinscoie.com
17                                               Ian D. Rogers, WSBA No. 46584
                                                 IRogers@perkinscoie.com
18                                               **Perkins Coie LLP**
                                                 1201 Third Avenue, Suite 4900
19                                               Seattle, WA  98101-3099
                                                 Telephone:  206.359.8000
20                                               Facsimile:  206.359.9000

21                                               Attorneys for Defendants Chihuly, Inc., Dale
                                                 Chihuly and Leslie Chihuly, and
22                                               Counterclaim- Plaintiffs Chihuly, Inc. and Dale
                                                 Chihuly

**CERTIFICATE OF SERVICE**

I certify that on February 5, 2019, I served the foregoing on the following attorney(s) of record of record by the method(s) indicated:

| | |
|---|---|
| Lincoln C. Beauregard | ___ Via U.S. Mail, 1st Class, Postage Prepaid |
| Evan T. Fuller | ___ Via Hand Delivery |
| Connelly Law Offices | ___ Via Overnight Delivery |
| 2301 North 30th Street | ___ Via Facsimile |
| Tacoma, WA 98403 | _X_ Via ECF |
| lincolnb@connelly-law.com | |
| efuller@connelly-law.com | |

I certify under penalty of perjury that the foregoing is true and correct.

DATED this 5th day of February, 2019.

s/ Harry H. Schneider, Jr.
HSchneider@perkinscoie.com
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000