UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL MOI,<br><br>               Plaintiff,<br><br>   vs.<br><br>CHIHULY STUDIO, INC., *et al.*,<br><br>               Defendants. | Cause No. C17-0853RSL<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on defendants' "Motion for Summary Judgment." Dkt. # 90. Plaintiff initiated this action in May 2017 alleging that he is the co-author of certain joint works produced with defendant Dale Chihuly, seeking an accounting and imposition of a constructive trust on all revenues received or derived from the joint works, and requesting an injunction correcting past misstatements regarding plaintiff's ownership and authorship of the joint works. In addition, plaintiff alleges that Chihuly promised to compensate plaintiff for his artistic contributions and argues that Chihuly should be estopped from disavowing that promise. Defendants seek dismissal of all claims against them.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." Krechman v. County of Riverside, 723 F.3d 1104, 1109 (9th Cir. 2013). Although the Court must reserve for the jury genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. S. Cal. Darts Ass'n v. Zaffina, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor. FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties and having heard the arguments of counsel, the Court finds as follows:

## BACKGROUND

Between 1999 and 2014, plaintiff was part of a team of assistants who collaborated with Dale Chihuly to create a large portfolio of paintings and drawings for Chihuly's signature. During the painting sessions, lines of paper and any necessary supplies (acrylic and watercolor paints, brushes, mops, charcoal, etc.) would be set out in the work space. Plaintiff and other assistants, working a few feet ahead of Chihuly, would mop out, burn, and/or dust backgrounds in a style and using techniques Chihuly showed them. While plaintiff exercised discretion in some unspecified aspects of the composition, he attempted to utilize the straight lines Chihuly favored and to create backgrounds that looked like Chihuly's existing body of work. Plaintiff

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT       -2-

would sometimes add "other stuff," such as "dots and maybe some circles" and Chihuly's standard forms (reeds, floats, baskets, etc.). Dkt. # 92-1 at 68, 73, 126. Plaintiff acknowledges that most of his backgrounds are rather difficult to differentiate from other assistants' work given that the goal was to create backgrounds as Chihuly would have done them. With regards to two series of works, plaintiff offers additional information. First, plaintiff showed other assistants how to burn backgrounds with a propane torch, and the studio created what is known as "the burn series" using this technique. Plaintiff tended to have a comparatively heavy hand with the torch and is fairly confident that he can identify backgrounds he burned because they have increased burn and bubble. Second, plaintiff conceived the idea for paintings depicting jack-o'-lanterns and participated in the creation of "the pumpkin series."

      Chihuly would follow along behind the assistants, adding his archetypal forms, lines, dots, and drips on top of the background created by the assistants. Chihuly created the paintings in part to conceptualize future three-dimensional projects and to communicate designs and instructions to the glass blowing teams. At the end of each session, Chihuly would decide whether to sign or discard the works produced.[1] Signed works were registered, photographed, and stored. Some of the paintings became the inspiration for glass works, some were publicly exhibited, some were sold, some remain in Chihuly's personal archive, and some were destroyed. Plaintiff had no control over the use to which his contributions were put, either as to the forms that were superimposed on the backgrounds or as to the disposition of the paintings. To the extent paintings were publicly displayed or offered for sale, they were represented as Chihuly's work, usually with no acknowledgment of the assistants or their contributions. Plaintiff did not expect attribution: he considered the paintings to be Chihuly's and was "doing [the work] strictly for [Chihuly]. We were not doing it for ourselves." Dkt. # 92-1 at 109 and 125.

---

[1] Chihuly had health issues and did not always participate in the painting sessions. In those circumstances, one of the other assistants would complete the painting and add Chihuly's signature.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT   -3-

Chihuly promised plaintiff that he would be compensated for his participation in the painting sessions and told plaintiff that his staff was keeping track of the paintings plaintiff helped produce. Plaintiff believed that Chihuly and the assistants were a team and, since he was not an employee, he would be compensated for his time and contributions. Plaintiff did not have any idea what the amount of compensation would be or when he would be paid: he "trusted and believed in [Chihuly] and . . . believed that he would just take care of [plaintiff] fairly." Dkt. # 92-1 at 76. There was no written agreement defining their relationship or specifying compensation.

In January 2015, Chihuly had a falling out with another assistant, Billy O'Neill. Plaintiff's contact with the studio diminished rapidly thereafter. In September 2016, plaintiff was told that O'Neill had sued Chihuly and that plaintiff's friendship with O'Neill was the reason he was no longer invited to participate in painting sessions. On December 24, 2016, plaintiff learned that Chihuly had repudiated his promises to "take care of" three other assistants, including O'Neill. Plaintiff asserts that, until December 24, 2016, he believed his ownership interest in the paintings he had worked on was uncontested and secure and that Chihuly would compensate him for his work. He filed this lawsuit shortly thereafter.

In the context of this litigation, plaintiff reviewed the Chihuly portfolio and identified 285 paintings "that - to the best of his recollection - were created during painting/drawing sessions that he participated in, and therefore, was integrally involved in and substantially contributed to the creation of said works." Dkt. # 92-1 at 23-32. Plaintiff has not specified what elements of each painting constitute the background he contributed, nor has he identified "other stuff" he added to any particular painting.[2]

---

[2] Although plaintiff states that he conceived the idea for "the pumpkin series" and participated in their creation, he does not include any of the paintings from this series in the 285 works in which he claims ownership.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT        -4-

**DISCUSSION**

**A. Joint Authorship**

Plaintiff alleges that his collaborations with Chihuly qualify as "joint works" pursuant to 17 U.S.C. § 201(a) and that plaintiff is therefore the co-author and co-owner of the works per the Copyright Act, 17 U.S.C. § 101, *et seq* ("Copyright Act"). A joint work for purposes of the Copyright Act is "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. "In a joint work, the joint authors hold undivided interests in a work, despite any differences in each author's contribution. Each author as co-owner has the right to use or to license the use of the work, subject to an accounting to the other co-owners for any profits. Thus, even a person whose contribution is relatively minor, if accorded joint authorship status, enjoys a significant benefit." Erickson v. Trinity Theatre, Inc., 13 F.3d 1061, 1068 (9th Cir. 1994) (internal citations omitted).

As an initial matter, each purported co-author must make "an independently copyrightable contribution" to the work in order to have a valid claim to ownership. Richlin v. Metro-Goldwyn-Mayer Pictures, Inc., 531 F.3d 962, 968 (9th Cir. 2008) A copyrightable contribution is not, in itself, sufficient to prove joint authorship under the Act, however. Id. (finding that the contribution of a fourteen-page original, creative, copyrightable story which became a substantial portion of the motion picture at issue in the case, did not give the authors of the story co-author status with regards to the movie). The Ninth Circuit has set forth several factors that are among the criteria to be weighed when determining a claim of co-authorship under § 101. The first factor is whether the claimed author "superintended" the work by exercising control. Aalmuhammed v. Lee, 202 F.3d 1227, 1234 (9th Cir. 2000). The second factor is whether the parties made "objective manifestations of a shared intent to be coauthors." Id. Lastly, the Court considers whether "the audience appeal of the work turns on both contributions and the share of each in its success cannot be appraised." Id. (internal quotations

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT        -5-

omitted). "Control in many cases will be the most important factor." Id. Application of the Aalmuhammed factors to the facts of this case show that plaintiff is not a co-author of the 285 works at issue.

The first factor strongly favors Chihuly. Although plaintiff exercised some control over his initial contribution to the paintings, his goal was to utilize the styles and techniques that Chihuly showed him so that his contribution mimicked what Chihuly would have done. Once the background was laid down, Chihuly utilized it as a backdrop for his artistic vision with no input from plaintiff. Chihuly determined whether the piece was saved or discarded, he registered, sold, copied, exhibited, stored, or destroyed the piece as he saw fit, and he had unilateral control over its publication and commercialization. The ultimate decision as to how or whether to incorporate plaintiff's creations into a signed Chihuly work was left entirely to defendant. Chihuly superintended the production of the works and had unilateral control over the finished products.

Plaintiff asserts that his contributions to the 285 paintings involved artistic expression. As noted above, however, simply making a copyrightable - even substantial - contribution to a work does not make one an author:

> So many people might qualify as an "author" if the question were limited to whether they made a substantial creative contribution that the test would not distinguish one from another. Everyone from the producer and director to casting director, costumer, hairstylist, and "best boy" gets listed in the movie credits because all of their creative contributions really do matter. . . . A creative contribution does not suffice to establish authorship . . . .

Aalmuhammed, 202 F.3d at 1233. The evidence in the record establishes as a matter of law that it was defendant who possessed and exercised control over the final product for purposes of the joint work analysis.

As to the second Aalmuhammed factor, in the absence of a formal contract establishing the mutual intent of the parties regarding authorship/ownership, an evaluation of their intent "must of necessity focus on the facts." Id. at 1235. Plaintiff has not presented any evidence of a

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT         -6-

mutual, shared intent to co-author the 285 paintings, nor does the record reveal any objective manifestations of that intent from either party. At most, plaintiff has shown that he collaborated with Chihuly to produce the works. There is no indication that the parties discussed ownership or authorship, and plaintiff acknowledges that he created the works for Chihuly, fully expecting that Chihuly would claim sole authorship and exercise all the rights of ownership. Chihuly, for his part, acted as the sole author and owner from the moment the works were created: he signed works he deemed worthy of inclusion in his portfolio, he represented himself as the sole author, and he exhibited, sold, copied, stored, and discarded the paintings without consulting plaintiff. Based on the existing record, no reasonable fact finder could conclude that plaintiff harbored even a subjective intent to be a co-author, much less that the parties objectively manifested such an intent. Plaintiff never identified himself as the author of the works, he raised no objections when defendant failed to acknowledge him as a co-author, and he made no claim of authorship prior to the 2017 demand letter that preceded this action. While the record could support a finding that plaintiff had an expectation that he would be compensated for his work on the paintings, compensation is different than authorship/ownership. Plaintiff has not raised a genuine issue of fact regarding a mutual intent to be co-authors.[3]

Plaintiff also fails to provide evidence regarding the market appeal of his contributions to the 285 paintings at issue. Plaintiff acknowledges that the market and market value for Chihuly paintings is derived largely from Chihuly's name and iconic style. In fact, plaintiff attempted to create backgrounds that mimicked Chihuly's style, and his participation in creating the works was kept secret in an effort to safeguard the value of the works. While the backdrop for Chihuly's work undoubtedly plays some part in the overall impression the piece makes on the audience, plaintiff has not identified his specific contributions to the 285 paintings at issue in this litigation much less attempted to show that those contributions generated audience appeal.

---

[3] Counsel's bald assertion that Chihuly acted "with the understanding that Mr. Moi was a co-author" (Dkt. # 108 at 16) is unsupported by the record.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT      -7-

Nevertheless, given the summary judgment standard, the Court finds that there is an issue of fact regarding this factor.

For all of the foregoing reasons, the Court finds that two of the three factors outlined in Aalmuhammed weigh heavily in favor of Chihuly, with a dearth of evidence regarding the third factor. The most important factor - which party superintended the creation of the work and possessed control over the final product - strongly favors Chihuly. Plaintiff has failed to provide evidence from which a reasonable jury could conclude that he authored the 285 works on which he collaborated. Plaintiff's claim that the paintings are joint works therefore fails as a matter of law.

**B. Independent Copyrightable Interest**

If plaintiff is not deemed a co-author of the 285 works at issue, he alternatively "reserves the right to seek a 'copyright' interest in the art work." Dkt. # 108 at 15. This alternative claim fails for three independent reasons. First, no such claim for relief is included in the complaint, and it cannot be inserted into the litigation in response to a motion for summary judgment. Second, plaintiff makes no effort to define the scope of the legal right he seeks or to establish the legal viability of such a claim. Plaintiff's claim that he is an author of 285 joint works has been rejected. Having failed to show that he authored or owns any of the paintings at issue, plaintiff now seeks to splinter each painting into at least two different works, one encompassing the background and "other stuff" he contributed and the other being the painting as a whole. If this theory were adopted, it is unclear what rights plaintiff would have over the use, sale, and disposition of the paintings. Could he, for example, preclude the sale of a painting because it incorporates his original, copyrightable background? Application of the joint work analysis results in the conclusion that he has no such right, and there is reason to suspect that plaintiff's back door theory of ownership and control would be rejected by the Ninth Circuit. See Garcia v. Google, Inc., 786 F.3d 733, 741-43 (9th Cir. 2015) (recognizing that where creative contributions have been merged into an integrated whole, the resulting joint work is entitled to

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT     -8-

copyright protection and fracturing the unitary work into its component parts would create logistical and financial nightmares).

Finally, even if creative contributions that have been incorporated into a single work could be decoupled and separately registered, plaintiff has not provided evidence from which a jury could reasonably identify plaintiff's copyrightable contributions to the 285 paintings. Defendants' motion for summary judgment placed the scope and nature of plaintiff's contributions squarely at issue. Defendants argued that plaintiff could not clear the first hurdle of the joint work analysis because he was unable to identify what original, artistic contribution he made to each joint work. See Dkt. # 90 at 16-19. Plaintiff acknowledges that many of his backgrounds look like the other assistants' work and that he was attempting to produce something that fit into Chihuly's larger body of works. He is able to identify paintings on which he collaborated to the extent they reflect a form of expression and style of which he believes himself capable, but he is reluctant to state definitively and under oath that he did or did not paint a particular picture. See Dkt. # 92-1 at 126-31. Even after plaintiff identified 285 works as his own during this litigation, he has been unwilling to specify the contributions he made to those paintings. To the extent plaintiff was simply copying Chihuly's original artistic expressions, using both his style and technique to create backgrounds just like Chihuly's prior works, his contributions may not be entitled to copyright protection at all. (In fact, such copying would infringe on Chihuly's copyrights if it were done without his permission.) While the Court does not doubt that, in some respects and as to some paintings, plaintiff made original artistic contributions that were independently copyrightable, it is impossible to identify them on the current record. Absent a discussion of plaintiff's contribution to each painting, the fact finder would be left to guess what parts of each composition were added by plaintiff and which of those elements were original. Plaintiff has failed to raise a genuine issue of material fact as to his

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT        -9-

claim for alternative relief.[4]

## C. Promissory Estoppel

Plaintiff asserts that principles of estoppel should preclude defendants from disavowing Chihuly's promises of compensation for the work he did during the painting sessions. Promissory estoppel has five elements: "(1) [a] promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise." Wash. Educ. Ass'n v. Wash. Dep't of Retirement Sys., 181 Wn.2d 212, 224-25 (2014) (quoting Havens v. C&D Plastics, Inc., 124 Wn.2d 158, 171-72 (1994) (alteration in original). Plaintiff's promissory estoppel claim is based on Chihuly's statements that the studio was keeping track of the work he did and that plaintiff would eventually be compensated for that work.

Not all promises can support a promissory estoppel claim, and the Court finds that the statements on which plaintiff relies are simply too vague to be enforceable. "Promissory estoppel requires the existence of a promise that is clear and definite." Wash. Educ. Ass'n, 181 Wn.2d at 225 (internal quotation marks and alteration omitted). An oral agreement to "take care of" plaintiff and/or to compensate him at some point in the future contains no details regarding the method for calculating the compensation, the rate to be paid, or the time of payment. In his complaint, plaintiff claims that the promise was for a share of the profits derived from the 285 paintings on which he collaborated. In his response to the motion for summary judgment, plaintiff claims in the alternative a right to compensation for the value of the time spent painting. The variability in the claimed relief - and the absence of any evidence regarding whether Chihuly intended to compensate plaintiff by the piece, by the hour, by a profit-sharing arrangement, or through some other means - highlights just how indefinite the alleged promise

---

[4] Plaintiff's claims for injunctive relief and for an accounting are derivative of his copyright claim. The claims therefore fail as a matter of law.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT        -10-

is. Courts in Washington have refused to enforce such ambiguous statements. See Lectus, Inc. v. Rainier Nat. Bank, 97 Wn.2d 584, 590 (1982) (noting that oral agreement to "ultimately" pay money was not definite enough to justify plaintiff's reliance on a conditional promise); Doron v. E. Wash. Univ., 184 Wn. App. 1058 (2014) (unpublished) (absent specifics regarding the promise that showed an intent to be bound, the promise is unenforceable); Keenan v. Allan, 889 F. Supp. 1320, 1385 (E.D. Wash. 1995) (where plaintiff cannot clearly state what she was promised, the oral agreement is not clear and definite enough to be enforced). See also Aguilar v. Int'l Longshoremen's Union Local No. 10, 966 F.2d 443, 446 (9th Cir. 1992) (where alternative inferences can be drawn from the language constituting the promise, the promise is unenforceable as vague, ambiguous and of indeterminate application). Because Chihuly's promise was not sufficiently definite for a Court to enforce, it cannot form the basis for a promissory estoppel claim.

**D. Statute of Limitations**

Defendants argue that plaintiff's copyright claims are barred by the applicable statute of limitation to the extent they are related to paintings that were created before February 21, 2014. "The Copyright Act of 1976 provides that all civil actions must be brought 'within three years after the claim accrued.'" Seven Arts Filmed Entm't Ltd. v. Content Media Corp., 733 F.3d 1251, 1255 (9th Cir. 2013) (citing 17 U.S.C. §507(b)). "[C]laims of co-ownership ... accrue when plain and express repudiation of co-ownership is communicated to the claimant, and are barred three years from the time of repudiation." Zuill v. Shanahan, 80 F.3d 1366, 1369 (9th Cir. 1996). There is no comprehensive list of the types of statements or activities that constitute "plain and express repudiation of co-ownership." Some courts have found that excluding a putative author from the copyright registration for the work provides constructive notice that sole ownership is claimed and is sufficient to start the clock on the limitations period. Saenger Org., Inc. v. Nationwide Ins. Lic. Ass'n, 119 F.3d 55 (1st Cir. 1997). The registration, standing alone, seems a perilous trigger, however. An unscrupulous claimant could surreptitiously register

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT         -11-

a copyright, hoping that the real author would not discover the registration for three years, thereby nullifying a rightful claim to the creative work. See Brownstein v. Lindsay, 742 F.3d 55, 72 (3rd Cir. 2014). In addition, relying solely on a form of constructive notice under 17 U.S.C. § 205(c) materially dilutes Zuill's requirement that the repudiation be "communicated to the claimant." The Court finds that the copyright registrations of the 285 works, standing alone, do not constitute plain and express repudiation of plaintiff's claimed ownership interest in the joint works that would trigger the three year statute of limitations.

The registrations are simply one piece of information that was available to plaintiff, however. Plaintiff acknowledges that he knew Chihuly would sign the paintings they created together, would take sole and exclusive control over the paintings, would register those he felt were worthy, and would sell, exhibit, store, copy, and/or discard the works as he saw fit. Chihuly publicly and repeatedly declared himself to be the sole author of the 285 works at issue. As was the situation in Aalmuhammed v. Lee, 202 F.3d 1227, 1230-31 (9th Cir. 2000), the works, when released to the public, did not acknowledge plaintiff as an author. Plaintiff was aware of Chihuly's assertion of sole authorship at the time the works were made[5] and cannot now claim that he was unaware that his claim to co-author status had been repudiated. Plaintiff's copyright claims are barred for works produced before February 21, 2014.

## CONCLUSION

For all of the foregoing reasons, defendants' "Motion for Summary Judgement" (Dkt. # 90) is GRANTED. All claims brought by plaintiff are hereby DISMISSED.

Dated this 20th day of June, 2019.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

---

[5] In his response, plaintiff asserts that "for years, Mr. Chihuly assured Mr. Moi that they were co-owners of the paintings." Dkt. # 108 at 16. There is no support in the record for this assertion.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT       -12-